ARTHUR G. B. METCALF, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

MARY C. THOMSON (FORMERLY MARY C. METCALF), PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 56056, 56330. Filed December 23, 1958.

*John Barr Dolan, Esq.,* for the petitioner in Docket No. 56056.
*Grafton J. Corbett, Jr., Esq.,* for the petitioner in Docket No. 56330.
*Chester M. Howe, Esq.,* for the respondent.

OPINION.

DRENNEN, *Judge:* Petitioner Arthur G. B. Metcalf, in Docket No. 56056 (referred to herein as Arthur), and petitioner Mary C. Thomson

(formerly Mary C. Metcalf, and referred to herein as Mary) in Docket No. 56330, were formerly husband and wife. Mary obtained a divorce from Arthur in 1950 and married Thomson in 1954.

The only issues are: (1) To what extent, if any, do the periodic payments made by Arthur to Mary during the year 1951 constitute alimony payments taxable to Mary under section 22 (k) and deductible by Arthur under section 23 (u) of the Internal Revenue Code of 1939; and (2) whether Arthur or Mary is entitled to the dependency credit for their five minor children for the year 1951.

Respondent determined a deficiency in the income tax liability of Arthur for the year 1951 in the amount of $4,002.28. Respondent arrived at this deficiency by disallowing as a deduction all payments made during the year by Arthur to Mary in excess of $1,300 and also disallowing the dependency credit for each of the five minor children.

Respondent determined a deficiency in the income tax liability of Mary for the year 1951 in the amount of $2,399.05. This was arrived at by taxing as income to Mary the entire amount paid to her during the year 1951 by Arthur, and not allowing her the dependency credit for any of the children.

On brief, respondent takes the position that only $1,450 [1] of the payments made by Arthur to Mary represented alimony and were thus deductible by Arthur, and that the balance of the $7,950 paid was for the support of the children and therefore not deductible by Arthur; that Arthur is entitled to the dependency credit for each of the five children; and that only the $1,450 is taxable income to Mary and she is not entitled to the dependency credits.

All of the facts are stipulated and are found as stipulated. The following is a summary of those facts.

Petitioner Mary C. Thomson was a resident of Milton, Massachusetts, and filed her individual income tax return for the taxable year 1951 with the collector of internal revenue for the district of Massachusetts on January 15, 1952. Petitioner Arthur G. B. Metcalf was also a resident of Milton, Massachusetts, and filed his individual income tax return for the taxable year 1951 with the collector of internal revenue for the district of Massachusetts on March 7, 1952.

On her income tax return for the year 1951, Mary included in her gross income the sum of $1,315.83 as alimony paid to her by Arthur. She also included in gross income the sum of $5,881.39 from a trust, and claimed a loss from her law practice in the amount of $387.83. Mary did not claim exemptions for any of her five children. Mary was notified by the Commissioner of Internal Revenue, in a notice of deficiency dated November 22, 1954, that a determination of her in-

---

[1] In the notice of deficiency, respondent allowed only $1,300, or $25 per week, as a deduction to Arthur. On brief respondent agrees that the additional $25 per week Arthur was directed to pay by order of the court of November 23, 1951, was in the nature of alimony and was therefore deductible by Arthur.

come tax liability for the taxable year 1951 disclosed a deficiency of $2,399.05, which amount was computed for the most part by including in Mary's taxable income for such year the aggregate amount of $7,925 as taxable income received from Arthur.[2] In his determination of this deficiency, respondent did not allow Mary exemptions for any of her five minor children.

Mary filed a petition in this Court, Docket No. 56330, in which she assigned as error respondent's inclusion in her taxable income for the year 1951 the sum of $6,609.71 which had been paid to her during such year by her divorced husband for the support of their five minor children. In the petition, Mary alleged that of the total sum of $7,950 paid to her during the year by her divorced husband only $1,300 thereof was received by her for her own support, and the balance was received by her for the support of her five children. She also alleged that of the $1,315.83 included in her gross income on her return, the sum of $15.83 was in excess of the amount properly includible in her gross income with respect to subject payments. Mary did not assign as error the failure of respondent to allow her exemptions for the five children.

In his income tax return for the taxable year 1951, Arthur claimed as deductions, on page 3, "Miscellaneous," the following:

Weekly payments to M. C. Metcalf to 11/24/51_____ $1,150.00
   (Under Agreement of Nov. 10, 1950)
Weekly payments to M. C. Metcalf_____ 1,050.00
   (Under Decree of Probate Court 11/23/51)

These payments represented $25 of each $150 weekly payment made by Arthur to Mary up to November 24, 1951, and the entire amount of $175 per week paid by Arthur to Mary after November 24, 1951. Arthur claimed exemptions for each of his five children on his tax return.

In 1953 Arthur's return for 1951 was audited by an agent of the Internal Revenue Service. The agent's report recommended adjustments to allow Arthur additional deduction for alimony paid to his wife in the year 1951, in the amount of $5,750, with the explanation that Arthur was entitled to deduct the entire $6,900 paid by him to Mary prior to November 25, 1951, whereas he had claimed as a deduction on the return only $1,150 of that amount. The agent's report also disallowed Arthur's claimed exemptions for the five minor children. Pursuant to this agent's report, Arthur, on or about April 22, 1954, received a refund of tax for the year 1951 and interest thereon in the amount of $1,773.10.

On or about July 26, 1954, Arthur was notified that his 1951 income tax return was again under consideration and Arthur received

___

[2] The actual amount paid by Arthur to Mary during the year appears to have been $7,950, and respondent contends on brief that the $25 discrepancy was an error in calculation.

a deficiency notice dated November 22, 1954, in which it was determined that there was a deficiency in his income tax liability for the year 1951 in the amount of $4,002.28. This deficiency was arrived at by allowing a deduction of only $1,300 of the amount paid by Arthur to Mary during the year 1951 and by not allowing Arthur any exemption for the five minor children, on the ground that it had not been established that he had provided over one-half of their support for the calendar year.

Arthur filed a petition in this Court, Docket No. 56056, assigning as error therein the refusal of respondent to allow as a deduction the entire amounts paid by him to his wife during 1951 as alimony under a decree of the Probate Court for Norfolk County, and to allow the claimed exemptions of $600 for each of his five children. The petition alleged that the entire amount paid by Arthur to Mary during the year was paid under the aforesaid decree of the Probate Court as alimony to Mary and none of it was specifically allowed as support for the minor children.

On brief Arthur agrees that if he is allowed a deduction for the entire amount paid to Mary during the year he is not entitled to exemptions for the children. It was stipulated that if this Court determines that amounts paid by Arthur in excess of $1,300 during the year 1951 are attributable to payments for the maintenance and support of the children and are not taxable to Mary, such amounts in fact constitute more than one-half of all amounts expended for the support of such children during the year 1951, and Arthur is entitled to exemptions for each of such children for such year.

On July 18, 1950, Mary filed a libel for divorce in the Probate Court of Norfolk County, Massachusetts, against Arthur. On September 1, 1950, the Probate Court entered a temporary decree for support, awarding the care and custody of the minor children of the parties to Mary, and decreeing that Arthur "pay to said libellant [Mary] the sum of one hundred and fifty-dollars on Saturday, September 2, 1950, and the further sum of one hundred and fifty dollars on each and every Saturday thereafter for her support and that of the minor children until the further order of the Court."

On November 10, 1950, Arthur and Mary entered into an agreement which recited, first, that the wife intended to take immediate steps to prosecute a libel for divorce against the husband, and included the following:

A. The Husband covenants with the Trustee for the Wife:

1. To pay to the Wife on the first day of each week during the lifetime of this agreement, the first payment to be made on Monday, November 20, 1950, the sum of One Hundred Fifty ($150) Dollars for the support and maintenance of the Wife and their five minor children, and in addition to pay all medical expenses incurred by or on behalf of any of said children and all bills for tuition

at private schools incurred by or on behalf of said children, subject to the following conditions:

    a. Upon the death of the Wife, all payments hereunder shall cease.

    b. Upon the remarriage of the Wife the said weekly payments shall be decreased by Twenty-five ($25) Dollars.

    c. As each child reaches the age of twenty-one (21) years or dies before reaching such age or marries or becomes self-supporting the said weekly payments shall be decreased by Twenty-five ($25) Dollars.

    2. The Wife shall have custody of their five minor children, provided, however, that if the Wife remarries, the Husband shall have the option of petitioning the Probate Court for the custody of the minor children. If custody is granted to the Husband, all payments hereunder shall cease.

Clause B of the agreement provided as follows:

B. The Wife covenants with the Trustee for the Husband:

1. To permit the Husband to visit with the children at all reasonable times and to allow the children to visit him at all reasonable times, such visits not to be made at a time or times when they would interfere with the normal activities of the children, such as school, and more specifically to allow the Husband to have the children stay with him as follows:

    a. One weekend every month.

    b. Two Sundays every month from 10:00 a. m. to 10:00 p. m.

    c. One week during the Christmas holidays.

    d. Two weeks during the summer vacation period.

    e. One week during the Easter holidays or at some other holiday season in the year.

Clause E of the agreement provided that it should be construed under the laws of Massachusetts, and clause F provided as follows:

F. The provisions of this agreement with respect to the support of the wife and children and the custody of the children shall be brought to the attention of the court at the time of hearing on the libel, and so much thereof shall be embodied in the decree of the court as it deems proper.

In addition to the above-quoted provisions, this agreement of November 10 also provided for settlement of all property rights of Mary and Arthur in all real and personal property owned by them. One of these provisions was for payment by Arthur to Mary of the sum of $10,000 as her share in the equity in the real estate at 182 Adams Street, Milton, Massachusetts, then being occupied by her as her residence, with the provision for increase in payments to Mary if the property were sold for more than $27,500, to be paid in several installments, the last of which was to be paid on or before December 1, 1951. The agreement also provided that Mary would consult with Arthur regarding medical treatment for the children and on all matters pertaining to selection of schools and educational facilities for the children.

Three days after the above agreement was signed, on November 13, 1950, the Probate Court entered a decree nisi granting a divorce to Mary, and providing as follows with respect to the custody and support of the children and Mary:

the care and custody of their minor children, namely : Anne C. Metcalf, Helen C. Metcalf, Mary L. Metcalf, Arthur G. B. Metcalf, Jr., and Hope S. Metcalf be and it hereby is awarded to the said libellant with the right to the libellee to see said children at reasonable times. The libellee is ordered to pay to the libellant for the support of the libellant and said minor children the sum of one hundred fifty dollars on Saturday, November 18, 1950, and the further sum of one hundred fifty dollars on each and every Saturday thereafter until the further order of the Court. The libellee is also to pay all medical and private school tuition and expenses of the children all until the further order of the Court.

The decree made no reference to the agreement of November 10. This decree became absolute on May 14, 1951.

On June 6, 1951, Mary filed a petition for modification of said decree of November 13, 1950, seeking to have the amount of weekly payments for her support and that of her children increased. The phraseology used in this petition simply quoted from the prior decree of the court with respect to Arthur's obligations for payments to Mary and requested that the court modify said decree to provide for an increase in the weekly sum which Arthur should pay to Mary under said decree.

Pursuant to said petition, a decree was entered by the Probate Court on November 23, 1951, in which the decree of November 13, 1950, was altered and modified "by increasing the order for support of said Mary C. Metcalf and the minor children of the parties from one hundred fifty dollars per week to one hundred seventy-five dollars per week, commencing on Saturday, November 24, 1951," and also further modifying said decree of November 13, 1950, by substituting for the clause giving Arthur the right to see the children at reasonable times a clause giving him more specific rights in this respect, which clause was in the exact language contained in paragraph B–1 of the agreement of November 10, 1950, quoted above.

On January 5, 1954, Arthur filed a petition with the Probate Court asking for custody of Anne, one of the five children. This petition recited the previous history of the action, stating that, under the terms of the decree of November 13, 1950, "custody and support of the minor children of the parties was granted to the respondent, Mary C. Metcalf," and stating that since the entry of the decree of November 23, 1951, circumstances had arisen which in petitioner's opinion required modification of the decree with respect to the custody of Anne C. Metcalf. The petition prayed that the decree of November 23, 1951, be modified or enlarged providing that custody of Anne be granted to Arthur, or in the alternative that the provisions for custody in the former decree be modified and enlarged by providing, with reference to Anne, that Arthur should "have the right to her companionship and to have her visit or live with him at such times and for such periods as may be agreed upon from time to time" by Arthur and

Mary. This petition did not request any change in the weekly amounts to be paid by Arthur to Mary.

Pursuant to said petition, a decree was entered by the Probate Court on April 21, 1954, granting custody of Anne to Arthur, with the right of Mary to visit and enjoy the companionship of Anne at any and all reasonable times as may be mutually agreed upon by Arthur and Mary. This decree made no adjustment in the amount to be paid by Arthur to Mary.

On October 14, 1954, Mary filed a petition in the Probate Court reciting the history of the proceeding and the various decrees made therein, and reciting further that, on September 26, 1954, she married Arthur D. Thomson. The prayer of the petition is that the court establish such amount as the court shall determine to be paid for the support of Helen C. Metcalf, Mary L. Metcalf, Arthur G. B. Metcalf, Jr., and Hope S. Metcalf from September 26, 1954.

Pursuant to the above petition, a decree was entered by the Probate Court on January 18, 1955, as follows:

It is decreed that the decree of this Court dated November 13, 1950 as modified by decrees of November 23, 1951 and April 21, 1954 be further modified by reducing the order of support from one hundred seventy-five dollars per week to one hundred twenty-five dollars per week for the support of Helen C. Metcalf, Mary L. Metcalf, Arthur G. B. Metcalf, Jr. and Hope S. Metcalf, minor children of the parties, the first payment to be made on Saturday, January 22, 1955 and payable on each and every Saturday thereafter until the further order of the Court.

The agreement entered into between the parties, dated November 10, 1950, was not specifically incorporated by reference into any decree of the Probate Court, but such agreement was incident to the divorce.

The principal question for decision is whether certain periodic payments made by Arthur to Mary in the year 1951 are taxable to Mary under section 22 (k) and deductible by Arthur under section 23 (u) of the Internal Revenue Code of 1939.

We have before us the petitions for redetermination of tax of both the former husband and wife because, in order to protect the revenue, the Commissioner proposed to tax all the payments to Mary and allow Arthur to deduct only $1,300 thereof. However, on brief, the Commissioner argues that only $1,450 of the total of $7,950 paid in the year 1951 should be included in Mary's taxable income, and only $1,450 should be deductible by Arthur.

Arthur argues that the payments were made only under the various decrees of the Probate Court in the divorce proceeding and that a settlement agreement executed 3 days before the divorce decree nisi was entered, insofar as it dealt with alimony and support payments, was not only repudiated by the parties but also lost all legal significance when the Probate Court assumed jurisdiction of the subject matter. Inasmuch as the decrees in effect during the year 1951 did not desig-

nate any specific amount of the weekly payments to Mary as being payable for the support of the minor children, he argues that all of it is taxable to Mary and deductible by him.

Mary's argument is that the payments she received in 1951 were received pursuant to the terms of the separation agreement which was incident to the divorce and that the agreement considered as a whole and the subsequent actions of the parties and the court clearly identifies the portion of the payments payable for the support of the minor children, being $25 per week for each of the five children, and under section 22 (k) only those amounts received in excess of the payments for support of the children, or $25 per week, are taxable to her. Respondent agrees with Mary's argument on brief, except as to amount.

Section 22 (k) [3] taxes to the divorced wife periodic payments received by her from her divorced husband under a decree of divorce or separate maintenance or under a written instrument incident to such divorce or separation. The subsection does not apply to "that part of any such periodic payment which the terms of the decree or written instrument fix, in terms of an amount of money or a portion of the payment, as a sum which is payable for the support of minor children of such husband." Section 23 (u) [4] allows the husband a deduction of the amount taxable to the divorced wife under section 22 (k).

The arguments and committee reports on these particular provisions of the law when they were adopted by Congress in 1942 do not shed too much light on the problem here involved. See H. Rept. No. 2333, 77th Cong., 2d Sess., pp. 71–74, and S. Rept. No. 1631, 77th Cong., 2d Sess., pp. 83–87, on the Revenue Bill of 1942 (H. R. 7378); 1 Seidman's Legislative History of Federal Income and Excess Profits Tax Laws, 1953–1939, pp. 1275–86. It is clear, however, that the sections were adopted to afford relief to husbands who were

---

[3] SEC. 22. GROSS INCOME.

(k) ALIMONY, ETC., INCOME.—In the case of a wife who is divorced or legally separated from her husband under a decree of divorce or of separate maintenance, periodic payments (whether or not made at regular intervals) received subsequent to such decree in discharge of, or attributable to property transferred (in trust or otherwise) in discharge of, a legal obligation which, because of the marital or family relationship, is imposed upon or incurred by such husband under such decree or under a written instrument incident to such divorce or separation shall be includible in the gross income of such wife, and such amounts received as are attributable to property so transferred shall not be includible in the gross income of such husband. This subsection shall not apply to that part of any such periodic payment which the terms of the decree or written instrument fix, in terms of an amount of money or a portion of the payment, as a sum which is payable for the support of minor children of such husband. * * *

[4] SEC. 23. DEDUCTIONS FROM GROSS INCOME.

In computing net income there shall be allowed as deductions:

(u) ALIMONY, ETC., PAYMENTS.—In the case of a husband described in section 22 (k), amounts includible under section 22 (k) in the gross income of his wife, payment of which is made within the husband's taxable year. If the amount of any such payment is, under section 22 (k) or section 171, stated to be not includible in such husband's gross income, no deduction shall be allowed with respect to such payment under this subsection.

required to pay large amounts of alimony and, under existing law, were left with little or nothing for themselves after paying high taxes on the alimony. It is also apparent that the only amounts to which such relief was directed were payments made in the nature of alimony for the support of the wife. The husband was not to be relieved of paying tax on amounts paid for the support of minor children. *Mandel* v. *Commissioner*, 185 F. 2d 50 (C. A. 7), affirming a Memorandum Opinion of this Court dated May 6, 1949. The discussion with reference to the latter provision, however, was in the language appearing in Regulations 118, section 39.22 (k)—that section 22 (k) was not to apply to that part of the periodic payments "which, by the terms of the decree or the written instrument" is "specifically designated" as a sum payable for the support of minor children.

This Court has on numerous occasions held that in any adequate consideration of this problem the agreement or decree as a whole must be considered and the mere fact that the agreement or decree provides only a single payment for support of both the wife and children is not the controlling factor where it is evident from other provisions that a specific sum or part of the payments is payable for the support of the children. *Robert W. Budd*, 7 T. C. 413, affd. 177 F. 2d 198 (C. A. 6); *Warren Leslie, Jr.*, 10 T. C. 807; *Truman W. Morsman*, 27 T. C. 520; *Russell W. Boettiger*, 31 T. C. 477. This interpretation has been approved by various appellate courts. *Budd* v. *Commissioner, supra; Mandel* v. *Commissioner, supra; Weil* v. *Commissioner*, 240 F. 2d 584 (C. A. 2), reversing 22 T. C. 612 and 23 T. C. 630 on other grounds, certiorari denied 353 U. S. 958.

This Court has also held that each of these cases must be decided on its own facts, and it is obvious that this must be so because few, if any, of the support provisions involved are exactly alike. We have also held that the answer must be found in the terminology of the decree or written instrument itself. *Truman W. Morsman, supra.* If the writing itself does not fix an amount as payable for the support of the children the entire amount of the payments must be included in the taxable income of the wife and correspondingly is deductible by the husband. However, if it can be ascertained from *either* a valid and effective written instrument executed incident to the divorce, or the decree of the court, that a specific amount of the payments to the wife are earmarked for support of the children, that is sufficient. We do not think the decree must incorporate all the pertinent language of the agreement in it to meet this test if it is clear that the agreement survives the decree and it contains the necessary provisions.

In the instant case all parties agree that an agreement such as the one here involved is valid and enforcible under Massachusetts law, *Bailey* v. *Dillon*, 186 Mass. 244, 71 N. E. 538 (1904) ; that while such an agreement cannot deprive the Probate Court of its jurisdiction over matters such as alimony, support, and custody of minor children, *Wilson* v. *Caswell*, 272 Mass. 297, 172 N. E. 251 (1930) ; neither does the Probate Court have power to alter the terms of the contract, *Schillander* v. *Schillander*, 307 Mass. 96, 29 N. E. 2d 686 (1940) ; that the entry of a divorce decree does not necessarily render such an agreement null and void, *Freeman* v. *Sieve*, 323 Mass. 652, 84 N. E. 2d 16 (1949) ; and whether an agreement is to survive the decree of divorce is governed by the intent of the parties to the contract determined from the terms of the contract, *Freeman* v. *Sieve, supra.*

We think it is clear that the agreement here involved was intended to and did survive the divorce decree. It is unlikely that the parties would enter into such a detailed agreement as to property rights, custody of children, and support of wife and children just 3 days before the decree nisi was entered without insisting that the agreement or all the terms thereof be adopted or included in the decree, unless it was intended that the agreement remain in full force and effect. The decree nisi was not inconsistent with the agreement in any material respect and directed payment of the same weekly amounts specified in the agreement. A subsequent decree of the court incorporated the identical language of the agreement with respect to the husband's rights to visit with the children. The wife must have been acting under the agreement when, after her remarriage, she voluntarily brought this fact before the court for a reduction in weekly payments, because no previous order of the court had so directed. The husband did not request a reduction in support payments when he obtained custody of one of the children, presumably because the agreement did not provide for such reduction in the event custody of only one child was given to the husband. The fact that the court increased the weekly payments by $25 in 1951 and gave custody of one of the children to the husband did not nullify the provisions of the agreement with respect to the payments therein agreed upon. The agreement itself contained no termination provision.

We are of the opinion that the agreement was intended to and did survive the divorce, that the various decrees of the court implemented and at times supplemented the agreement, and that we must look to the agreement as well as the various court proceedings to determine whether an amount or portions of the payments were specifically designated or earmarked for the support of the children.

The agreement provided that the wife should have custody of the five minor children and that the husband should pay to the wife for

her support and that of the five children the sum of $150 per week, plus additional amounts, as incurred, for medical and tuition expenses of the children, all subject to the following conditions:

(a) Upon the death of the wife all payments were to cease.

(b) Upon remarriage of the wife the payments were to be decreased by $25 per week.

(c) As each child reached the age of 21 years, or died, or married, or became self-supporting, the payments were to be decreased by $25 per week.

The agreement also provided that if the wife remarried, the husband had the right to petition the court for custody of all the children and, if granted, all payments were to cease.

We think the above provisions of the agreement and the agreement as a whole earmarked $25 per week of the total of $150 per week required to be paid by the husband to the wife as payments for the support of each minor child and $25 as support for the wife. While the entire $150 was to be paid to the wife in a single sum, she was required to use it for the support of herself and the children, and in any year that one of the contingencies occurred she would receive $25 less for each child and consequently would not have that $25 available for her own use.

The actions of the parties and of the court support this conclusion. Arthur claimed a deduction of only $25 per week on his income tax return for 1951 for payments made up to the date of the court decree of November 23, 1951, increasing the total payments to $175 per week, and indicated that these payments were made under the agreement of November 10, 1950. Arthur also claimed the children as dependents on his 1951 return. Mary included only one-sixth of the total payments received by her in her income for 1951 and did not claim the children as dependents on her return. When Mary remarried, the court decree entered January 18, 1955, "modified" the decrees of November 13, 1950, November 23, 1951, and April 21, 1954, by "reducing the order of support from one hundred seventy-five dollars per week to one hundred twenty-five dollars per week for the support of" the minor children.

There is no explanation in the record of why the weekly payments were increased from $150 to $175 by the decree of November 23, 1951, and in the absence of such explanation we must conclude that the additional $25 per week was alimony or support for Mary. This is consistent with the decrease of $50 per week in the amount to be paid provided by the decree of January 18, 1955, after Mary had remarried.

The United States Court of Appeals for the Second Circuit recently reversed this Court on the issue here involved in *Weil* v. *Commissioner*, *supra*, and in *Hirshon's Estate* v. *Commissioner*, 250 F. 2d 497 (C. A.

2), reversing 27 T. C. 558, as did the United States Court of Appeals for the Sixth Circuit in *Deitsch* v. *Commissioner*, 249 F. 2d 534 (C. A. 6), reversing 26 T. C. 751. While some language in the *Weil* and *Deitsch* opinions suggests that when, under the terms of the decree or agreement, all payments are to be made to the wife for the support of herself and children, the terms thereof must clearly indicate that a specified part of the payments are for the support of the children and can be used for that purpose only to avoid being taxed to the wife, we do not understand those decisions as requiring that the payments be separated to avoid taxation to the wife. We believe those cases are distinguishable on the facts and when it is clear that a fixed part of the single weekly payment to the wife is intended for the support of the children, as here, such amounts are not taxable to the wife and are not deductible by the husband.

We conclude that of the payments totaling $7,950, made by Arthur to Mary during the year 1951, the total of $6,500 was paid for the support of the children under the terms of the agreement and the decrees of the court dated November 13, 1950, and November 23, 1951. The remainder of such payments, in the total amount of $1,450, was paid as alimony for the support of Mary. The additional $25 per week paid by Arthur to Mary, pursuant to the court decree of November 23, 1951, was paid as alimony for the support of Mary. Consequently, Mary is taxable on $1,450 of the amount she received from Arthur during the year 1951 and that Arthur is entitled to deduct only $1,450 of the payments he made to Mary during the year 1951.

Arthur having paid at least $6,500 for the support of the children, he is entitled to an exemption of $600 for each of the five minor children for the year 1951, it being evident from the stipulation that the parties are in agreement that the payments of $25 per week constituted more than one-half of the support of each child during that year.

*Decisions will be entered under Rule 50.*