WILLIAM F. ASHE AND KATHLEEN L. ASHE, PETITIONERS, *v* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 68441. Filed November 27, 1959.

*David A. Johnston, Jr., Esq.*, for the petitioners.
*Conley G. Wilkerson, Esq.*, for the respondent.

TIETJENS, *Judge:* This proceeding involves deficiencies in income tax determined by respondent in the amounts and for the years as set forth below:

1953 _____$1,284.74
1954 _____ 1,169.64

The only issue is whether the monthly payments of $250 paid by William F. Ashe, pursuant to the terms of a written agreement incorporated into a decree of divorce, constituted alimony payments made solely for the support of his minor children.

### FINDINGS OF FACT.

The stipulated facts are so found and are incorporated herein by this reference.

William F. Ashe (hereinafter referred to as the petitioner) and Kathleen L. Ashe, husband and wife, filed their joint Federal income tax returns for the taxable years 1953 and 1954 with the district director of internal revenue at Columbus, Ohio.

Petitioner and his former wife, Rosemary Ashe, were married on April 15, 1939. Three children were born of that marriage: Nancy Elizabeth Ashe, born April 11, 1941; Sally Ann Ashe, born August 27, 1942; and Susan Keily Ashe, born December 25, 1943.

On December 18, 1945, petitioner and Rosemary Ashe were divorced by a decree of the Court of Common Pleas, Cuyahoga County, Ohio. Incorporated in the court's decree was an agreement entered into between the petitioner and Rosemary Ashe, pertinent parts of which are set forth below:

2. The HUSBAND will pay unto the WIFE the sum of Two Hundred Fifty Dollars ($250.00) per month, commencing with the signing of the within agreement, from which sum of Two Hundred Fifty Dollars ($250.00) the WIFE will deduct the sum of Thirty-five Dollars ($35.00) per month and pay same to the former wife of the HUSBAND by a previous marriage, for the support and maintenance of JAMES ASHE, son of the HUSBAND by said former marriage; the said deduction of Thirty-five Dollars ($35.00) to continue as long as the HUSBAND is in United States military service, and for a period of six (6) months thereafter, after which period the WIFE shall be privileged to retain the entire sum of Two Hundred Fifty Dollars ($250.00) per month to be used for the support and maintenance of the said minor children of the parties hereto.

3. In the event the sum of Two Hundred Fifty Dollars ($250.00) shall not be required for the support and maintenance of said minor children, the WIFE is at liberty to do with any balance remaining as she deems just, proper and fit.

4. The payment of said sum of Two Hundred Fifty Dollars ($250.00) per

month shall continue until the eldest of said children be twenty-one (21) years of age, or gainfully employed and self-supporting, at which time the payment shall be reduced one-third (⅓) and as each of the younger children shall become twenty-one (21) years of age or shall be gainfully employed or otherwise self-supporting, the payment shall be reduced in like proportion.

5. The payment of the support and maintenance of the said minor children shall constitute a complete and full release of any and all liability on the part of the HUSBAND as and for support and maintenance of the WIFE and/or the minor children of the parties hereto.

A controversy arose as to whether the payments made by petitioner pursuant to that decree constituted alimony or child support; the problem being how these payments should be treated for tax purposes. As a result of a meeting between petitioner, the former Rosemary Ashe, and her attorney, relative to this controversy, the Court of Common Pleas of Cuyahoga County, Ohio, was requested to make a journal entry *nunc pro tunc* in the divorce proceeding between the parties. That entry was made in February 1949. Incorporated therein was an agreement entered into by petitioner and the former Rosemary Ashe, the pertinent provision of which is set forth below:

7. That the husband is to pay the wife, as alimony, the sum of $250 per month which sum shall be diminished by one third (⅓) on April 11, 1962, or prior thereto if and when Nancy Elizabeth Ashe becomes gainfully employed and self-supporting prior to said date; said sum to be diminished by an additional one third (⅓) on August 27, 1963 or prior thereto if and when Sally Ann Ashe becomes gainfully employed and self-supporting prior to said date; said sum to be diminished a further sum of one third (⅓) on December 25, 1964 if and when Susan Keily Ashe becomes gainfully employed and self-supporting prior to said date; the husband to be relieved of all payments to the wife in any event as hereinabove provided on December 25, 1964.

At all times subsequent to December 18, 1945, the children born of the marriage between petitioner and the former Rosemary Ashe have been in the legal custody of their natural mother. Sometime during the years in issue, the former Rosemary Ashe remarried, her name thereby being changed to Rosemary Shaft.

Pursuant to the terms of the agreement between them as evidenced by the journal entry *nunc pro tunc*, petitioner paid the former Rosemary Ashe $250 per month, or $3,000 per year, for each of the years 1953 and 1954. On their Federal income tax returns for both these years, petitioners deducted these amounts in full as alimony.

The respondent disallowed the claimed deductions on the basis that the payments were for the support of petitioner's three minor children, and therefore were not deductible under the provisions of sections 23(u) and 215 of the Internal Revenue Codes of 1939 and 1954, respectively.

OPINION.

This proceeding presents the familiar question as to whether payments made pursuant to the terms of a decree of divorce were periodic payments of alimony, or were payments fixed by that decree as a sum payable for the support of the husband's minor children. The taxable year 1953 is controlled by sections 22(k) and 23(u) of the 1939 Code; and the taxable year 1954 is controlled by sections 71 and 215 of the 1954 Code.

Sections 23(u) and 215 of the respective Codes allow a husband to deduct payments made to a former wife which are includible in her gross income under sections 22(k) and 71. These latter sections exclude from the wife's gross income that part of the payments which the terms of the decree or written instrument fix, in terms of an amount of money or a portion of the payment, as a sum payable for the support of the husband's minor children. Whether an amount has been fixed as support is a question of fact, depending for its resolution upon an interpretation of the terms and provisions of the decree or agreement as a whole. *Harold M. Fleming*, 14 T.C. 1308 (1950); *Warren Leslie, Jr.*, 10 T.C. 807 (1948); *Robert W. Budd*, 7 T.C. 413 (1946), affd. 177 F. 2d 198 (C.A. 6, 1947).

In the instant case the agreement between the parties, incorporated into the decree of divorce, provided that the husband was to pay the wife as "alimony" $250 per month, $3,000 per year. This sum was to be diminished by one-third when the oldest child of the marriage reached her majority or became self-supporting; by another one-third when the second oldest child reached her majority or became self-supporting; and by a final one-third when the youngest child reached her majority or became self-supporting. In any event, all payments were to cease upon December 25, 1964, the 21st birthday of the youngest child. In our opinion these provisions clearly lead to the conclusion that the parties earmarked, or "fixed," the entire $250 monthly payment as payable for the support of the minor children. No other conclusion could be justified in light of the requirements that the payments be reduced by one-third as each child attained its majority or became self-supporting; and the further requirement that all payments were to cease in any event upon the youngest child's 21st birthday.

Thus no part of the payments in issue was includible in the income of the former Rosemary Ashe, and correspondingly petitioner was not entitled to deduct the payments as "alimony."

In reaching this conclusion we believe we have properly considered the record as a whole, including the original decree and the fact that the *nunc pro tunc* entry was apparently occasioned by tax savings' motives. But cf. *Joslyn* v. *Commissioner*, 230 F. 2d 871

(C.A. 7, 1956), modifying 23 T.C. 126. Even without those two factors, however, we think the record fully justifies our result.

That the payments provided for by the agreement were denominated "alimony" is not controlling. Labels such as this should not be binding, especially where, as here, the question before the Court is whether the payments are what the taxpayer has labeled them on afterthought to be, or whether the payments under the agreement are in reality payable for the support of the children.

Much the same reasoning applies to petitioner's argument that the parties intended, through the medium of the *nunc pro tunc* decree, effectively to designate the payments alimony for tax purposes. The reports are replete with instances where a taxpayer intended to accomplish a certain result but failed; viz, the taxpayer's intention to effectuate a tax-free reorganization which went awry in *Gregory* v. *Helvering*, 293 U.S. 465 (1935); and the taxpayer's attempt to create a valid short-term trust in *Helvering* v. *Clifford*, 309 U.S. 331 (1940).

Petitioner submits the instant case is within the pattern of *Weil* v. *Commissioner*, 240 F. 2d 584 (C.A. 2, 1957), reversing 23 T.C. 630 (1955) and modifying 22 T.C. 612 (1954). Therefore he argues that the respondent is bound by the Commissioner's announced intention to follow the Second Circuit's opinion in *Weil*. Rev. Rul. 59–93, 1959–1 C.B. 22. Respondent on the other hand contends the instant case is clearly within the pattern of *Eisinger* v. *Commissioner*, 250 F. 2d 303 (C.A. 9, 1957), affirming T.C. Memo. 1956–48, which, according to Rev. Rul. 59–93, *supra*, the Commissioner also will follow. We agree with respondent. See the extended discussion of the Court of Appeals for the Ninth Circuit in *Eisinger* v. *Commissioner*, *supra*, wherein that court effectively distinguishes the type of contingency which was fatal to the Commissioner's position in *Weil*, *supra*, from the type of contingency in *Eisinger*, and, as we view it, the type of contingency which we have in the case presently before us.

In reaching this conclusion we have carefully considered the opinion of the Court of Appeals for the Sixth Circuit in *Deitsch* v. *Commissioner*, 249 F. 2d 534 (C.A. 6, 1957), reversing 26 T.C. 751 (1956). As we have noted above, the question is factual, depending on the terms and provisions of the entire agreement under consideration, and we believe *Deitsch* distinguishable. *Metcalf* v. *Commissioner*, 271 F. 2d 288 (C.A. 1, 1959), affirming 31 T.C. 596 (1958).

Reviewed by the Court.

*Decision will be entered for the respondent.*