ARTHUR D. THOMSON AND MARY C. THOMSON, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

ARTHUR G. B. METCALF, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 1099–63, 1717–63. Filed July 28, 1964.

*Grafton J. Corbett, Jr.,* for the petitioners Arthur D. Thomson and Mary C. Thomson.

*John Barr Dolan,* for the petitioner Arthur G. B. Metcalf.

*Raoul E. Paradis,* for the respondent.

OPINION

SCOTT, *Judge:* Respondent determined deficiencies in the income tax of Arthur D. and Mary C. Thomson for the calendar years 1955, 1956, 1957, and 1958, in the amounts of $3,082.58, $2,691.34, $3,100.27, and $3,305.78, respectively, and determined deficiencies in the income tax of Arthur G. B. Metcalf for the calendar years 1955, 1956, 1957, 1958, and 1959 in the amounts of $3,801.55, $1,677.10, $51.56, $1,273.74, and $437.15, respectively.

The issues for decision are:

(1) Whether payments made by Arthur G. B. Metcalf to Mary C. Thomson in the amount of $6,350 in the year 1955 and in the amount of $6,500 in each of the years here in issue subsequent to the year 1955 are includable in the income of Mary C. Thomson and deductible by Arthur G. B. Metcalf.

(2) Whether Arthur G. B. Metcalf is entitled to deductions for dependency exemptions in each of the years here involved for four of his minor children.

All of the facts have been stipulated and are found accordingly.

Arthur G. B. Metcalf, the petitioner in docket No. 1717–63 (hereinafter referred to as Arthur), and Mary C. Thomson (formerly Mary C. Metcalf, hereinafter referred to as Mary), one of the petitioners in docket No. 1099–63, were, prior to their divorce under a decree entered November 13, 1950, husband and wife.

On September 26, 1954, Mary married Arthur D. Thomson. Mary and Arthur D. Thomson filed joint Federal income tax returns for each of the calendar years 1955, 1956, 1957, and 1958 with the district director of internal revenue for the district of Massachusetts.

Arthur filed an individual income tax return for each of the taxable years 1955, 1956, 1957, 1958, and 1959 with the district director of internal revenue for the district of Massachusetts.

On November 10, 1950, Arthur and Mary and their respective trustees entered into an agreement which recited that Arthur and Mary were living apart, that Mary intended to take immediate steps to prosecute a libel for divorce, that they desired to effect an agreement through the medium of their trustees whereby they might settle their respective property rights, and that the parties mutually agreed that:

A. The Husband [Arthur] covenants with the Trustee for the Wife [Mary]:

1. To pay to the Wife on the first day of each week during the lifetime of this agreement, the first payment to be made on Monday, November 20, 1950, the sum of One Hundred Fifty ($150) Dollars for the support and maintenance of the Wife and their five minor children, and in addition to pay all medical expenses incurred by or on behalf of any of said children and all bills for tuition at private schools incurred by or on behalf of said children, subject to the following conditions:

a. Upon the death of the Wife, all payments hereunder shall cease.

b. Upon the remarriage of the Wife the said weekly payments shall be decreased by Twenty-Five ($25) Dollars.

c. As each child reaches the age of twenty-one (21) years or dies before reaching such age or marries or becomes self-supporting the said weekly payments shall be decreased by Twenty-Five ($25) Dollars.

2. The Wife shall have custody of their five minor children, provided, however, that if the Wife remarries, the Husband shall have the option of petitioning the Probate Court for the custody of the minor children. If custody is granted to the Husband, all payments hereunder shall cease.

\* \* \* \* \* \* \*

B. The Wife covenants with the Trustee for the Husband:

1. To permit the Husband to visit with the children at all reasonable times and to allow the children to visit him at all reasonable times, such visits not to be made at a time or times when they would interfere with the normal activities of the children, such as school, and more specifically to allow the husband to have the children stay with him as follows:

a. One weekend every month.

b. Two Sundays every month from 10 a.m. to 10 p.m.

c. One week during the Christmas holidays.

d. Two weeks during the summer vacation period.

e. One week during the Easter holidays or at some other holiday season in the year.

\* \* \* \* \* \* \*

E. This agreement shall be construed under the laws of the Commonwealth of Massachusetts.

F. The provisions of this agreement with respect to the support of the wife and children and the custody of the children shall be brought to the attention of the court at the time of hearing on the libel, and so much thereof shall be embodied in the decree of the court as it deems proper.

The decree nisi entered by the Probate Court for Norfolk County, Mass., on November 13, 1950, granted Mary a divorce from Arthur, and provided as follows with respect to the custody of the children and the support of Mary and the children:

that the care and custody of their minor children, namely: Anne C. Metcalf, Helen C. Metcalf, Mary L. Metcalf, Arthur G. B. Metcalf, Jr., and Hope S. Metcalf be and it hereby is awarded to the said libellant with the right to the libellee to see said children at reasonable times. The libellee is ordered to pay to the libellant for the support of the libellant and said minor children the sum of one hundred fifty dollars on Saturday, November 18, 1950, and the further sum of one hundred fifty dollars on each and every Saturday thereafter until the further order of the Court. The libellee is also to pay all medical and private school tuition and expenses of the children all until the further order of the Court.

The decree made no reference to the written agreement between Arthur and Mary dated November 10, 1950. The decree of the Probate Court entered November 13, 1950, became absolute on May 14, 1951.

On June 6, 1951, Mary filed a petition for modification of the decree of the Norfolk County Probate Court of November 13, 1950, seeking to have the amount of the weekly payments for the support of herself and her minor children increased. Pursuant to this petition, a decree was entered by the Probate Court of Norfolk County on November 23, 1951, in which the decree of November 13, 1950, was altered and modified "by increasing the order for support of said Mary C. Metcalf and the minor children of the parties from one hundred fifty dollars per week to one hundred seventy-five dollars per week commencing on Saturday, November 24, 1951, and payable on each and every Saturday thereafter," and further altering and modifying the decree of November 13, 1950, by substituting for the clause giving Arthur the right to see the children at reasonable times a clause giving him more specific rights in this respect, which clause was in the exact language contained in paragraph B1 of the agreement of November 10, 1950.

On January 5, 1954, a petition for modification of the decree of November 13, 1950, with reference to the custody of Anne C. Metcalf was filed in the Norfolk County Probate Court by Arthur. In accordance with this petition on April 21, 1954, the Norfolk County Probate Court entered the following decree:

It is Decreed that the decree of this Court dated November 13, 1950 as modified by decree of November 23, 1951, be further modified and altered by granting the custody of Anne C. Metcalf, minor child of the parties, to said petitioner; with the right to the respondent to visit and enjoy the companionship of said minor child at any and all reasonable times as may be mutually agreed upon by the petitioner and respondent, all until the further order of the Court.

On September 27, 1954, counsel for Mary wrote to counsel for Arthur advising that Mary had married the previous day and further stating:

Under the terms of the property settlement agreement dated May 10, 1950, it is provided that upon her remarriage, the weekly payments due her should be decreased by $25.00.

In view of the above, I would suggest that Mr. Metcalf send Mrs. Thompson the sum of $150 per week in the future rather than the sum of $175 contained in the decree of the Probate Court dated November 23, 1951. Inasmuch as the money is payable in advance and the check for this week has already been received, I would suggest that next week's check be in the sum of $125 as Mr. Metcalf would be entitled to a credit in that amount.

On October 14, 1954, Mary filed a petition in the Norfolk County Probate Court in which she recited the provisions of the decree of November 13, 1950, with respect to the amounts to be paid to her for her support and the support of the minor children under that decree

and the modifications of the decree entered by the court on November 23, 1951, with respect to the payments to be made and April 21, 1954, with respect to the granting of the custody of Anne C. Metcalf to Arthur, and that on September 26, 1954, she had married Arthur D. Thomson. This recital was followed by the following prayer:

Wherefore, your petitioner prays,

(1) That this honorable court establish such amount as the court shall determine to be paid for the support of said Helen C. Metcalf, Mary L. Metcalf, Arthur G. B. Metcalf, Jr., and Hope S. Metcalf, from September 26, 1954.

(2) And for such other and further relief as to this honorable court may be deemed meet and proper.

On January 18, 1955, the Norfolk County Probate Court entered the following decree:

ON the petition of Mary C. Thomson, formerly Mary C. Metcalf of Milton in said County, who was the libellant in a libel for divorce brought by her against Arthur G. B. Metcalf, praying that this honorable Court establish such amount as the Court shall determine to be paid for the support of Helen C. Metcalf, Mary L. Metcalf, Arthur G. B. Metcalf, Jr. and Hope S. Metcalf, minor children of the parties, from September 26, 1954 and for such other and further relief as to this honorable Court may be deemed meet and proper, for the reasons set forth in said petition. Arthur G. B. Metcalf having had due notice of said petition and objection being made thereto;

It is DECREED that the decree of this Court dated November 13, 1950 as modified by decrees of November 23, 1951 and April 21, 1954 be further modified by reducing the order of support from one hundred seventy-five dollars per week to one hundred twenty-five dollars per week for the support of Helen C. Metcalf, Mary L. Metcalf, Arthur G. B. Metcalf, Jr. and Hope S. Metcalf, minor children of the parties, the first payment to be made on Saturday, January 22, 1955 and payable on each and every Saturday thereafter until the further order of the Court.

For the year 1955 Arthur deducted as an alimony payment to Mary the amount of $6,350 which deduction was disallowed by respondent. In each of the years 1956 and 1957, Arthur deducted an amount of $6,500 as an alimony payment to Mary which deduction in each of these years was disallowed by respondent.

On his income tax return for each of the years 1958 and 1959 Arthur claimed a dependency exemption for Helen C., Mary Lee, Hope S., Anne C., and Arthur G. B. Metcalf, Jr., which claimed dependency deductions were disallowed by respondent, except for that of Anne C. Metcalf.

On their joint income tax returns for the years 1955, 1956, 1957, and 1958 Arthur D. and Mary C. Thomson included no amount as income from alimony received by Mary from Arthur, and claimed no deduction for a dependency exemption for any of Mary's children. Respondent in his notice of deficiency for each of these years increased the income as reported by Mary C. and Arthur D. Thomson by an

amount of $6,500 [1] which he explained as being alimony income received from Arthur but did not allow any additional deduction for dependency exemptions. Respondent in his brief states that he has disallowed the deduction to Arthur for alimony payments while including such payments in Mary's income in order to protect the revenue and that it is his position that one of the petitioners but not both should prevail on this issue. He takes the position that if this Court determines that the payments to Mary from Arthur are taxable as alimony, they are deductible by Arthur, but if this Court determines that these payments are for child support and therefore not taxable to Mary they are not deductible by Arthur. Respondent takes the position that Arthur has failed to establish that he is entitled to the dependency exemption deductions which were disallowed or to additional deductions for dependency exemptions for the years 1955, 1956, and 1957.

Each of the parties recognizes that the issue with respect to whether the payments here involved are includable in Mary's income and deductible by Arthur is governed by the provisions of section 71 of the Internal Revenue Code of 1954.[2] Under the provisions of this section, if the payments are not, under the terms of the decree or agreement, "fixed in terms of an amount of money or a part of the payment as a sum which is payable for the support of minor children" of Arthur, the payments are taxable to Mary and deductible by Arthur. While there are no facts in the record of the instant case to so show, it is apparent from the facts here stipulated and all parties in their arguments recognize, that the tax liabilities for the taxable year 1951 of each of the petitioners (except Mary's present husband, Arthur D. Thomson) were litigated before this Court in the case of *Arthur G. B. Metcalf*, 31 T.C. 596 (1958), affd. 271 F. 2d 288 (C.A. 1, 1959). In that case we held that the amount of $125 per week of

---

[1] Mary apparently does not contest the inclusion in her 1955 income of the amount of $150, confining her contention to payments made subsequent to the decree of Jan. 18, 1955.

[2] SEC. 71. ALIMONY AND SEPARATE MAINTENANCE PAYMENTS.

(a) GENERAL RULE.—

(1) DECREE OF DIVORCE OR SEPARATE MAINTENANCE.—If a wife is divorced or legally separated from her husband under a decree of divorce or of separate maintenance, the wife's gross income includes periodic payments (whether or not made at regular intervals) received after such decree in discharge of (or attributable to property transferred, in trust or otherwise, in discharge of) a legal obligation which, because of the marital or family relationship, is imposed on or incurred by the husband under the decree or under a written instrument incident to such divorce or separation.

\* \* \* \* \* \* \*

(b) PAYMENTS TO SUPPORT MINOR CHILDREN.—Subsection (a) shall not apply to that part of any payment which the terms of the decree, instrument, or agreement fix, in terms of an amount of money or a part of the payment, as a sum which is payable for the support of minor children of the husband. For purposes of the preceding sentence, if any payment is less than the amount specified in the decree, instrument, or agreement, then so much of such payment as does not exceed the sum payable for support shall be considered a payment for such support.

[All references are to the Internal Revenue Code of 1954 unless otherwise indicated.]

the payments of $150 per week prior to November 23, 1951, and $175 per week thereafter, was for child support and not includable in Mary's taxable income nor deductible by Arthur.

In our opinion we stated at page 605:

the agreement was intended to and did survive the divorce, that the various decrees of the court implemented and at times supplemented the agreement, and that we must look to the agreement as well as the various court proceedings to determine whether an amount or portions of the payments were specifically designated or earmarked for the support of the children.

We construed the agreement as fixing an amount for support of Arthur's minor children.

The United States Court of Appeals for the First Circuit agreed with our conclusion that the agreement of November 10, 1950, fixed an amount as child support within the meaning of section 22(k) of the Internal Revenue Code of 1939, which with respect to its application to the issue here involved contains substantially the same provision as section 71 of the Internal Revenue Code of 1954. The Court of Appeals' opinion also considered Arthur's alternative position that the agreement was superseded by "the decree or decrees of the Probate Court, and is, accordingly, not presently controlling" and held adversely to his contention.

Subsequent to the opinion of the United States Court of Appeals for the First Circuit in *Metcalf* v. *Commissioner*, 271 F. 2d 288 (C.A. 1, 1959), the Supreme Court in *Commissioner* v. *Lester*, 366 U.S. 299 (1961), held that "fix" as used in section 22(k) of the Internal Revenue Code of 1939 means "expressly specify," and that the fact that an agreement showed a sufficiently clear purpose on the part of the parties that a particular portion of the payment was for child support was not sufficient to shift the liability for tax on the amount. In a footnote, the Supreme Court referred to the opinion of the United States Court of Appeals for the First Circuit in the case of *Metcalf* v. *Commissioner*, as being contrary to the conclusion of the United States Court of Appeals for the Second Circuit in the case of *Commissioner* v. *Lester*, 279 F. 2d 354 (C.A. 2, 1960), which opinion the Supreme Court affirmed.

Arthur argues that under the doctrine of collateral estoppel, this Court is bound by the decision in *Arthur G. B. Metcalf*, 31 T.C. 596 (1958), affd. 271 F. 2d 288 (C.A. 1, 1959), determining that his payments to Mary were made under the agreement of November 10, 1950, which remained effective after the entry of the decree of November 13, 1950, and the decree of January 18, 1955, of the Probate Court of Norfolk County, Mass. Arthur contends that this determination requires a holding in his favor in the instant case since the agreement did not expressly specify an amount for child support and therefore

payments pursuant to this agreement are includable in Mary's income and deductible by him under *Commissioner* v. *Lester, supra.*

In the instant case Arthur did not specifically plead collateral estoppel. The record in the prior case was not put in evidence. Collateral estoppel is an affirmative defense which raises an issue separate from other issues as to the proper tax liability. Only those issues raised in the pleadings are considered by this Court. *Irving Segall*, 30 T.C. 734, 741 (1958), and cases there cited. However, even if the allegations of fact in Arthur's petition as to our holding in *Arthur G. B. Metcalf*, 31 T.C. 596, 605 (1958), and that of the Court of Appeals in *Metcalf* v. *Commissioner*, 271 F. 2d 288, were considered sufficient to put the issue of collateral estoppel before us (see *Erwin Gerber*, 32 T.C. 1199 (1959)), we hold that doctrine inapplicable to this case.

Our holding and that of the Court of Appeals in the prior case was that even though the court decree in effect for the year there involved did not earmark a portion of the payment as child support, the agreement which survived this decree did earmark the amount of $125 a week for support of minor children. The decree entered January 18, 1955, after Mary's remarriage was the decree in effect for the years here at issue. The January 18, 1955, decree expressly specified the $125 per week payments to be for the support of the four minor children listed. Therefore, the issue in the instant case is not identical to that in the prior. There has also been a change in the controlling law by the decision of the Supreme Court in *Commissioner* v. *Lester, supra,* since the decisions in the prior case. Mary's remarriage after the year in issue in the prior case constitutes a factual difference with respect to the year there involved and the years involved in the instant case. Under these circumstances, collateral estoppel does not apply since the matter raised in the instant case is not identical with that in the prior case and "the controlling facts and applicable legal rules" have not remained unchanged. *Commissioner* v. *Sunnen*, 333 U.S. 591 (1948).

As we stated in our opinion in the prior *Metcalf* case (31 T.C. 596, 605) an agreement such as the one of November 10, 1950, between Arthur and Mary and their trustees is valid under Massachusetts law. It is an enforceable contract and is not rendered void by the divorce decree unless by its terms this is intended. *Freeman* v. *Sieve*, 323 Mass. 652, 84 N.E. 2d 16 (1949). However, as stated in the opinion of the Court of Appeals in *Metcalf* v. *Commissioner, supra* at 292:

The parties cannot, by their agreement, limit the right of the probate court to order, from time to time, what it deems appropriate for alimony or support of minor children. *Wilson* v. *Caswell*, 272 Mass. 297, 172 N.E. 251. This principle is, in essence, a one-way street. The court has no complementary power to relieve the husband of his obligations under the agreement. *Schillander* v. *Schillander*, 307 Mass. 96, 29 N.E. 2d 686. True, it might make its order

for alimony and support less than the amount provided for in the agreement, but that would only affect the extent to which the wife could rely upon contempt proceedings for enforcement. It would not bar an independent action upon the agreement. *Freeman* v. *Sieve, supra* [323 Mass. 652, 84 N.E. 2d. 16].

In the instant case the facts show that the payments made by Arthur during the years here in issue discharged a legal obligation "which because of the * * * family relationship is imposed on" him "under the decree" of January 18, 1955. The terms of the decree of January 18, 1955, "fix, in terms of an amount of money * * * as a sum which is payable for the support of minor children" of Arthur the $125 weekly payments. Under the specific language of sections 71 (a) and (b) the amounts received by Mary in discharge of Arthur's legal obligation imposed by the decree of January 18, 1955, are not includable in her income.

The facts indicate that the same payment which discharges Arthur's obligation imposed under the decree of January 18, 1955, also discharges his contractual obligation incurred under the agreement of November 10, 1950. Under Massachusetts law each of these obligations existed in each of the years here involved since the agreement and the decree each imposed an obligation although one payment could discharge both.

Sections 71 (a) and (b) are each written in the disjunctive. Section 71(b) provides that there shall not be included in the wife's income any payment which the terms of the "decree" or the "agreement" fix as child support. Under that section, when both the decree and the agreement are effective and enforceable, it is necessary only that one or the other of the instruments "fix" the amount as payable for support of the husband's minor children. The fact that "section 22(k) [1939 Code] reads in the disjunctive" was noted in the Court of Appeals' opinion in *Metcalf* v. *Commissioner, supra.*

We hold that the payments of $125 a week made by Arthur to Mary after January 18, 1955, were payments which the terms of the decree fixed as support of Arthur's minor children and therefore under section 71(b) are not includable in Mary's income. Since section 215 provides for the deduction by the husband only of amounts includable in the wife's income under section 71 the $125-a-week payments made by Arthur to Mary after January 18, 1955, and throughout the years here involved are not deductible by Arthur.

Arthur, in the alternative, argues that he is entitled to four dependency exemptions for the four minor children in Mary's custody. There are no facts in the record with respect to the amount expended to support the children or whether the payments by Arthur constituted over one-half of their support. All of the facts were stipulated, and there is no mention made in the stipulated facts of the support of the

**834**

minor children for any of the years here in issue. Because of this failure of proof by Arthur, we sustain respondent's disallowance of his claimed dependency exemptions for his children other than Anne C. Metcalf for the years 1958 and 1959, and hold that Arthur has failed to establish that he is entitled to four additional dependency exemptions for 1955, 1956, and 1957.

*Decision will be entered under Rule 50.*