*Decision will be entered under Rule 50.*

IRVING SEGALL AND MONICA SEGALL, HUSBAND AND WIFE, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 57118. Filed June 27, 1958.

*Philip A. Brenner, Esq.*, and *Julius Kuschner, Esq.*, for the petitioners.

*Paul J. Henry, Esq.*, and *Chester M. Howe, Esq.*, for the respondent.

ATKINS, *Judge:* A deficiency in the amount of $2,686.74 in income tax determined by the respondent for the calendar year 1950 results entirely from the disallowance of a deduction claimed on the return in the amount of $10,278.57 as representing a legal fee paid. The respondent held that since the amount was not paid by the petitioner as a legal fee, but rather was paid by him to his controlled corporation

as a result of the payment of a legal fee in the same amount by the corporation in 1947, the payment was not deductible by the petitioner, but constituted a contribution to the capital of the corporation. The petitioner contends that the full amount is deductible, but that if the entire amount in issue is not deductible, nevertheless a portion should be allowed on a time-allocation basis for the time the law firm devoted to the civil aspects of the petitioner's income tax case as distinguished from its criminal aspects.

## FINDINGS OF FACT.

Some of the facts are stipulated and are incorporated herein by this reference.

The petitioners are husband and wife residing at Marblehead, Massachusetts. Their joint income tax return for the calendar year 1950 was filed with the collector of internal revenue at Boston, Massachusetts. Monica Segall is a party to this proceeding only by reason of having been a party to the joint return, and Irving Segall will herein be referred to as the petitioner.

During the years 1942 to 1945, inclusive, and prior thereto the petitioner was engaged in the manufacture of shoe buckles as a sole proprietor under the name Lynn Buckle Mfg. Co. On July 1, 1946, Lynn Buckle Mfg. Co., Inc., sometimes herein called the corporation, was organized and commenced business. The petitioner was the principal stockholder of the corporation. Upon its formation the corporation took over the assets and liabilities of the sole proprietorship previously conducted by the petitioner.

On March 11, 1946, the petitioner was personally contacted by special agents of the Internal Revenue Service and was informed that his individual income tax returns for the years 1942, 1943, and 1944 were under examination by the agents. The petitioner's income tax return for the year 1945, which had not then been filed, was subsequently included in the examination.

On January 9, 1947, the law firm of Higgins, Brenner & Higgins was retained by the petitioner to represent him and his brother, Harry Segall, in the determination and settlement of their income tax liabilities for the years 1942 to 1945, inclusive. The retainer agreement, which was in the form of a letter from the petitioner to the law firm, and agreed to by endorsement on the letter by the law firm, provided in part as follows:

I wish to retain and employ you to represent me, Irving Segall, of Lynn, Massachusetts, proprietor of the Lynn Buckle Manufacturing Company of Lynn, Massachusetts, and my brother, Harry Segall of Marblehead, Massachusetts, as tax counsel in connection with all legal and tax questions involved in or that may arise in determining and settling our individual and combined net income and tax liabilities for the years 1942, 1943, 1944 and 1945.

You are to represent us and perform all legal services as may be required in this connection, and will defend us in all actions and proceedings to which we, or any of us, may be a party or be involved, in the Bureau of Internal Revenue, the Tax Court of the United States, and in other Federal or State Courts, as well as before any other board, bureau, commission, department or other judicial or administrative body, with jurisdiction over the subject matter of our contract.

For such services, you are to be paid a fee in the amount of $10,000.00 payable in four equal monthly instalments of $2,500.00 each. When our several net income and income tax liabilities for the years mentioned are finally determined, without any of us having been found guilty of any criminal act, I shall pay you an additional sum of $10,000.00.

\*     \*     \*     \*     \*     \*     \*

You will be reimbursed for your reasonable and necessary expenses paid or incurred in connection with this matter, not to exceed $1,000.00, upon the presentation of vouchers, receipts, or other proper evidence of expenditures.

On January 15, 1947, the law firm filed with the Internal Revenue Service a power of attorney to represent the petitioner.

During the year 1947 the corporation paid to the law firm the sum of $10,000 for services performed and to be performed by the law firm under the retainer agreement, plus $278.57 as reimbursement for expenses. The payments were made as follows:

| Date | Amount |
|------|--------|
| Jan. 8, 1947 | $2,500.00 |
| Feb. 3, 1947 | 2,575.00 |
| Mar. 3, 1947 | 2,500.00 |
| Apr. 2, 1947 | 2,500.00 |
| June 9, 1947 | 203.57 |
| Total | 10,278.57 |

All payments made in 1947 were made by checks of the corporation. The first check was signed by the petitioner as treasurer. The other checks were signed by Harry Segall as president. The payment made on February 3 was in response to an invoice from the law firm addressed to Lynn Buckle Manufacturing Co., which was the sole proprietorship. The payments of March 3 and April 2 were in response to invoices addressed to the corporation.

During the period that the shoe buckle business was conducted by the petitioner as a sole proprietorship, it had been the practice for the business to pay the petitioner's bills and to charge the amount thereof to him. That practice was continued after the business was incorporated. The petitioner knew in 1947 that the retainer had been paid by the corporation.

On January 1, 1947, the corporation was indebted to the petitioner on notes payable in the amount of $42,969.14. On February 28 an amount of $80.97 was debited to the account and on the same date an amount of $3,533.80 was credited. On December 31 an amount of $40,000 was debited to the account and credited to capital stock ac-

count, leaving a balance in the petitioner's favor at the end of the year in the amount of $6,421.97.

After the law firm had been retained its members or employees held a series of conferences with the petitioner and sent men to the petitioner's place of business to examine records. Meetings were had with the revenue agents who were examining the petitioner's records. The law firm obtained and furnished voluminous records to the revenue agents. It engaged an accounting firm to assemble information in support of the petitioner's contention that he had spent large sums of money to purchase metal, as to which purchases there were no records. For such accounting services the law firm paid the sum of $1,500 and did not separately charge the petitioner therefor. The report prepared by the accountants was filed with the revenue agents.

Between the dates of February 21, 1947, and April 12, 1949, the special agent who examined the petitioner's income tax case had 13 conferences with members of the law firm. At one of the conferences the petitioner and his brother, Harry, were present. During that period and continuing until the early part of 1950 other conferences were held between members or employees of the law firm and representatives of the Internal Revenue Service. On October 14, 1949, the case was referred by the office of the special agent in charge to the regional counsel with a recommendation for criminal prosecution. A conference was held on February 6, 1950, in the office of the Chief Counsel of the Internal Revenue Service with respect to the recommendation that the petitioner be prosecuted for willful attempted evasion of income tax liability for the years 1942 to 1945, inclusive. The petitioner, his brother Harry, and a member of the law firm were present at that conference. During the investigation of the petitioner's tax liability revenue agents sought and obtained from the petitioner consents extending the period for assessment and collection of income taxes for the years under examination. Throughout the examination special agents received from the law firm accounting reports, records, invoices, and other data pertaining to purchases and sales by the petitioner during the taxable years.

On March 10, 1950, a complaint was filed with the United States Commissioner charging the petitioner with willful attempted evasion of income tax liability for the year 1943. A true bill was returned by a Federal grand jury in Boston charging the petitioner with willful attempted evasion of income tax liability for the years 1943 and 1944. At the arraignment on the indictment the petitioner entered a plea of not guilty. When the case, styled *United States* v. *Irving Segall*, was called for trial in the United States District Court on September 26, 1950, the petitioner changed his plea from not guilty to guilty, and was sentenced to serve 6 months in jail. During the proceedings

before the United States Commissioner and in the United States District Court the petitioner was represented by members of the law firm.

On October 27, 1950, the internal revenue agent in charge at Boston advised the petitioner of his determination of deficiencies in income tax and 50 per cent additions for the years 1942 to 1945, inclusive. Protests against the proposed determination were filed by a member of the law firm, and four conferences with respect thereto were held which were attended by members of the law firm and a conferee in the office of the internal revenue agent in charge. In October 1951 a settlement was reached in which deficiencies and penalties were determined in lesser amounts than originally proposed by the agent in charge.

The law firm, pursuant to the retainer agreement, also represented the petitioner in the matter of the claim of the State of Massachusetts against the petitioner for State income taxes.

In addition to the fee of $10,000 received by the law firm in 1947 under the retainer agreement of January 8, 1947, it received payments aggregating $5,000 in 1951 and 1952 for services performed in connection with the income tax case.

The total time of members and employees of the law firm spent on the petitioner's income tax case amounted to 736 hours. Of that total, 568 hours were spent before October 14, 1949, when the case was sent to the regional counsel with a recommendation for criminal prosecution; 70 hours were spent on the case until criminal proceedings were terminated; the remaining time, 80 hours was spent thereafter in the determination of the amount of tax and additions thereto.

The sum of $10,278.57 paid by the corporation to the law firm in 1947 was claimed as a deduction for legal fees on the income tax return of the corporation for the year 1947. Such deduction was disallowed in a revenue agent's report dated August 2, 1950, and the corporation agreed to the disallowance.

In 1950, after disallowance of the deduction claimed by the corporation, the petitioner paid to the corporation $10,278.57 and claimed a deduction in that amount in the joint income tax return filed for the year 1950 as a legal fee paid to the law firm. The corporation credited to surplus the amount so received from the petitioner.

In determining the deficiency, the respondent disallowed the deduction of the $10,278.57 claimed on the joint return and determined that that amount represented a contribution of capital to the corporation.

The amount of $10,278.57 paid by the petitioner to Lynn Buckle Mfg. Co., Inc., in 1950 was not an ordinary and necessary business expense paid or incurred by the petitioner in that year.

The error assigned in the petition in this case is the respondent's disallowance of the entire sum of $10,278.57 as a deduction for 1950. This continues to be the principal issue, but it is alternatively claimed that there should be allowed as a deduction for that year the portion of $10,278.57 that is allocable to the civil aspects of the 1942–1945 income tax case.

We fail to see any reason for allowing any part of the sum in question as a deduction for the year 1950. Section 23 (a) (1) of the Internal Revenue Code of 1939 provides for the deduction of all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including a reasonable allowance for salaries or other compensation for services actually rendered.

Here the legal fee was incurred in 1947 and was paid in that year by the corporation. It certainly was not incurred in 1950, and although the petitioner paid an equivalent amount to the corporation, we do not see how it can be considered as a payment of the legal fee. The petitioner argues that the fee was paid by the corporation due to the mistaken assumption that it was paying its own indebtedness and that when in 1950, after the deduction had been disallowed to the corporation, the petitioner reimbursed the corporation, the petitioner was for the first time paying his own obligation for the legal fee. The petitioner states on brief that he was on a cash basis and that hence he should be allowed to deduct the payment in 1950.

It is clear from the testimony that the petitioner, who was the principal stockholder of the corporation, knew in 1947 that the payments were made by the corporation. The evidence does not establish that there was an understanding that this would be repaid to the corporation. Indeed, since the corporation itself claimed the deduction, it would seem that there was no intention of repayment. Under the circumstances the payment may have constituted a dividend.

But whether it was a loan or a dividend to the petitioner which could be considered to have been used by him to pay the legal fee, the payment of the legal fee occurred in 1947 and would not give rise to an allowable deduction for the year 1950. If there was no loan, then the payment by the petitioner to the corporation in 1950 would constitute a contribution to capital as held by the respondent and hence not deductible. If there was a loan then the payment by the petitioner in 1950 would be simply the repayment thereof which would not be deductible. In this connection see *Robert B. Keenan*, 20 B. T. A. 498, where the taxpayer borrowed money from a bank to meet business expenses, repaid the bank loan in a later year, and claimed a business

expense deduction in the year of repayment. In sustaining the respondent's disallowance of the deduction we said:

\* \* \* The law provides for the deduction from gross income of all ordinary and necessary expense incurred or paid in the taxable years. Section 214 (a) (1), Revenue Act of 1924. In the instant case the expenses were both incurred and paid prior to the year here in controversy. That the payments were made with borrowed money is not material and can not have the effect of postponing the deductions until the years in which the borrowed money was repaid. To hold otherwise would in effect permit taxpayers to elect the years in which expenses might be deducted from income and would do violence to the generally accepted principle that taxes are to be computed on a yearly basis. Cf. *A. D. W. Weis*, 13 B. T. A. 1284.

See also *Hazel McAdams*, 15 T. C. 231, affd. (C. A. 5) 198 F. 2d 54.

Much of the evidence adduced and a considerable portion of the briefs relate to the question of the proper allocation of the fee in question as between the civil and the criminal phases of the 1942–1945 income tax case. However, since the deduction for 1950 must be disallowed in toto for the reasons stated above, we find it unnecessary to consider the arguments relating to the effect of the criminal phase of that case upon the deductibility of the fee or to find what portion of the fee is properly allocable to the civil aspects of the case.

Much of the petitioner's argument is devoted to an attempted demonstration that the principle of the case of *Hymie Schwartz*, 22 T. C. 717, affd. (C. A. 5) 232 F. 2d 94, is applicable here. In that case we allowed as a deduction for the year 1950 attorney's fees paid in that year for representation of the taxpayer in the civil aspects of his tax case.[1] An insurmountable factual distinction between that case and this one is that there the fee was paid by the taxpayer in the year for which he claimed the deduction. Because of this factual difference, the *Hymie Schwartz* case is no authority for the petitioner's claim for a deduction in this case.

Moreover, it appears that the fee paid to the law firm was not entirely for services on behalf of the petitioner. The retainer agreement sets forth quite clearly that the law firm's services were engaged for the purpose of representing both the petitioner Irving and his brother, Harry. There is evidence that Harry at that time was the subject of an income tax investigation, and the petitioner testified that the fee paid to the law firm was for services rendered to both. The record does not disclose what disposition was made of Harry's income tax investigation nor the extent of the legal services rendered to Harry by the law firm. To whatever extent services were rendered in Harry's case, the payment therefor would not give rise to a deduction by the petitioner. See *Interstate Transit Lines* v. *Commissioner*, 319

[1] That case also involved a conviction on criminal charges, but we were not called upon to decide whether fees paid to other counsel for services in connection with the criminal aspects were deductible.

U. S. 590; and *South American Gold & Platinum Co.*, 8 T. C. 1297, affirmed per curiam (C. A. 2) 168 F. 2d 71.

The respondent's disallowance of the claimed deduction for 1950 is sustained.

The petitioner presented at the hearing and on brief the alternative contention that the legal fee, or the portion thereof allocable to the civil phase of the tax case, is deductible by him for the year 1947, the year in which it was paid by the corporation controlled by him.

The respondent has not determined a deficiency for the year 1947 and consequently that year is not before us. However, the petitioner claims the benefit of section 3801 of the Internal Revenue Code of 1939 which, he argues, will permit an adjustment for the year 1947. His theory for the allowance of a 1947 deduction is that he in effect paid the legal fee in 1947 with money borrowed from his controlled corporation, citing *Robert B. Keenan, supra*, and similar cases.

No mention is made in the petition concerning a deduction for the year 1947; the respondent is not charged therein with error in failing to allow a deduction for the year 1947; the prayer of the petition does not contain any mention of the year 1947. Under these circumstances the section 3801 question is not properly before us for decision. *Camp Wolters Enterprises, Inc.*, 22 T. C. 737, and *Earl V. Perry*, 22 T. C. 968. However, see *Wiener Machinery Co.*, 16 T. C. 48, 54, where a similar question was decided adversely to the taxpayer.

*Decision will be entered for the respondent.*