Ralph C. Wells v. Commissioner.
Wells v. Commissioner
Docket No. 91465.
United States Tax Court
T.C. Memo 1963-40; 1963 Tax Ct. Memo LEXIS 304; 22 T.C.M. (CCH) 169; T.C.M. (RIA) 63040; February 14, 1963
John T. McKellar, Esq., 2626 Westheimer Rd., Houston, Tex., for the petitioner. Robert I. White, Esq., for the *307 respondent. TRAIN
Memorandum Findings of Fact and Opinion TRAIN, Judge: Respondent determined a deficiency in petitioner's income tax for the calendar year 1956 in the amount of $1,269.47 with additions to tax under section 6651 of the 1954 Code in the amount of $317.37. The issues for decision are as follows: (1) Whether petitioner is liable for the addition to tax under section 6651, 1954 Code, for failure to file a timely return; (2) Whether the income of the business, "Betty Wells," was correctly reported in its original U.S. Partnership Return filed for 1956; (3) Whether the $200 paid to the Greater Houston Athletic Club and the $620 paid to William Flato are deductible under section 165, 1954 Code, as losses rather than under section 166, 1954 Code, as nonbusiness bad debts; (4) Whether the $800 paid with the joint declaration of estimated tax for 1956 should be allocated $400 to petitioner and $400 to Betty Wells; (5) Whether petitioner is liable for self-employment tax; and (6) Whether petitioner is liable for an assessment of $31.37. Findings of Fact Some of the facts have been stipulated and are hereby found as stipulated. Petitioner *308 Ralph C. Wells (hereinafter sometimes referred to as Ralph) and Betty Wells (hereinafter referred to as Betty) were married on or about December 1, 1945. At all times relevant to this proceeding they have resided in Houston, Texas. Since 1950, petitioner has been engaged in the practice of public accounting as an employee, a member of accounting firms, or for his own account. During 1952 petitioner became a certified public accountant. During 1953, Ralph and Betty leased one-half of the premises located at 2531 University Boulevard, Houston, Texas. Shortly after the premises were leased they opened a ladies' ready-to-wear business. The funds used to acquire the business came from a bonus check petitioner received from his employer. In June 1955, Ralph and Betty opened a second ladies' ready-to-wear store in Houston. The second store was located at 4066 Westheimer Street. Until at least the end of 1955, both of these stores were operated as a proprietorship. Petitioner and Betty reported the income from the stores' operations as community income under the laws of the State of Texas on their income tax returns through 1955. On March 11, 1957, petitioner and Betty were divorced. *309 Issue 1 For the taxable year 1956, by timely application, petitioner was granted extensions of time within which to file his Federal income tax return until August 15, 1957. Petitioner prepared his Federal income tax return for 1956 on Form 1040 from his books and records. After preparing the return, he placed it in an envelope containing a check for $1,060.60 and sealed the envelope. He then placed an unused three cent stamp on the envelope. The envelope was addressed to the district director of internal revenue, Austin, Texas, and included petitioner's return address. On August 11, 1957, at approximately 6:30 or 7:00 P.M., petitioner placed the envelope in a United States mail box on the northeast corner of Drexel Drive and Westheimer Road, Houston, Texas. The envelope has never been returned to petitioner. Petitioner contacted the bank in an attempt to find out if his check cleared. The bank refused to give petitioner any information without the acquiescence of Betty which she refused to give. Petitioner did attempt a bank reconciliation and the check was outstanding for one month. On October 14, 1957, petitioner ceased keeping books for Betty Wells, Inc. Thereafter, all *310 statements and cancelled checks were delivered directly to Betty. Petitioner issued no subpoenas in an attempt to produce the check for $1,060.60 mailed with his 1956 return. The district director of internal revenue's (hereinafter referred to as the district director) office in Austin, Texas, prepares index cards for income tax returns filed in that office. The index file is maintained perpetually. A search of the index cards maintained by the district director was made shortly prior to the hearing of this case. The only index entry card found for Ralph, covering a 1956 income tax return, pertained to a return filed by petitioner on March 25, 1958. A search of the district director's records was made shortly before the hearing of this case to determine whether funds aggregating $1,060.60 had been received by the district director on or about August 15, 1957, from petitioner. This search produced negative results. On March 25, 1958, a copy of petitioner's original Form 1040 for 1956 was presented to the district director. Any failure on the part of Ralph to file a return for 1956 was due to reasonable cause and not due to willful neglect. Issue 2 On September 14, 1956, Betty *311 Wells, Inc., (hereinafter sometimes referred to as the corporation) was organized and authorized to do business in the State of Texas. On October 17, 1956, the unincorporated business known as "Betty Wells" was terminated and its assets and liabilities distributed to petitioner and Betty. On October 17, 1956, petitioner and Betty executed a bill of sale conveying certain goods, wares, merchandise, furniture and fixtures, and the name "Betty Wells" together with all of the good will in connection therewith. The total value of these assets assigned in the bill of sale was $25,646.71. As consideration, the corporation assumed certain liabilities of Ralph and Betty aggregating $12,117.01 and paid $10,000 in cash to petitioner and Betty. In the bill of sale to the corporation, the machandise inventory was valued at $18,457.59. The inventory was composed of merchandise on hand at the shops located at 2531 University Boulevard ($7,458.15) and 4066 Westheimer Street ($10,999.44). The inventory located at 2531 University Boulevard was determined by a physical count on October 16, 1956. The retail values of the items were listed and attached to the bill of sale. The aggregate retail *312 value of this stock was $11,474.08. The retail figure was then reduced to its estimated cost of $7,458.15. [1]
The inventory located at 4066 Westheimer Street was also determined by a physical count on October 16, 1956. The retail values were listed and attached to the bill of sale. The aggregate retail value of this stock was $16,922.23. The retail figure was reduced to its estimated cost of $10,999.44. [2]
In the original partnership return for 1956, filed for the business known as "Betty Wells," the inventory at October 16, 1956, was shown to be $22,706.95. The corporation return for Betty Wells, Inc., filed during 1958 for the fiscal period beginning October 17, 1956, indicated that its beginning inventory was $22,706.95. The books of account maintained by the unincorporated business "Betty Wells" indicated that its merchandise inventory as of October 16, 1956, was $22,706.95. During January 1957, the corporation drew two checks in the respective amounts of $160.65 and $195.38 payable to the order of the ad valorem tax collectors of the City of Houston and Harris County, respectively. These checks were delivered *313 to the respective payees during January 1957 and charged against the corporate bank account during February 1957. Issue 3 During 1956, petitioner paid $200 to a venture known as the Greater Houston Athletic Club (hereinafter referred to as the Club) and $620 to William R. Flato (hereinafter referred to as Flato). The money paid to the Club was for the promotion of the proposed organization. The Club was to be a nonprofit organization. The $620 paid to Flato, petitioner's brother-in-law, was to be used by Flato to acquire Watts National Automobile Supply Company in San Antonio, Texas. The proposed acquisition never materialized. Petitioner did not recoup the $820. Petitioner consulted attorneys in 1957 about collecting the foregoing amount of $820; however, no suits were ever filed. Flato was employed, owned a car and was buying a home. Petitioner never saw financial statements of either the Club or Flato. Issue 4 On January 16, 1957, a declaration of estimated tax for the taxable year 1956 was filed with the district director in the names of Ralph and Betty. The declaration was signed by both Ralph and Betty. A payment of $800 was made with the declaration. On page 1 *314 of petitioner's individual income tax return for 1956, he showed $400 on line 17(b) under the caption "Payments and credits of 1956 Estimated Tax." On page 1 of Betty's individual return for 1956, she showed $400 on line 17(b) under the caption "Payments and credits of 1956 Estimated Tax." Issue 5 During the period January 1, 1956, through October 16, 1956, the books of account maintained for the unincorporated business known as "Betty Wells" were kept in the form typically used by a partnership. There were two net worth accounts, one for Betty and one for Ralph. In addition, both Betty and Ralph had drawing accounts. Petitioner signed, as a partner, a statement in July 1957 in support of the request for an additional extension of time within which to file the Form 1065, United States partnership return, for the year 1956 for the unnicorporated business known as "Betty Wells." Petitioner prepared the original partnership return for the business known as "Betty Wells" for the year 1956. In November 1959, an amended partnership return was prepared by petitioner. Petitioner signed the return, as partner, and filed it. With his original Federal income tax return for 1956, petitioner *315 filed a self-employment tax return showing his distributive share of the business known as "Betty Wells" as partnership income and reported self-employment tax thereon. On both his original individual income tax return for the year 1956 and his amended individual income tax return for 1956, petitioner reported as partnership income his distributive share of the income from the business known as "Betty Wells." In an informal protest dated May 6, 1960, and addressed by petitioner to a conference coordinator in the district director's office, petitioner admitted that a partnership which began on January 1, 1956, existed between himself and Betty. The following is an excerpt from the protest: Agent Saenz alleges that Ralph C. Wells was the accountant for Betty Wells, a partnership which was organized by Ralph C. Wells and his ex-wife, Betty Wells. Previous to January 1, 1956, the partnership was operated as an individual proprietorship. The facts are that up to and including December 31, 1955, two retail Ladies' Ready to Wear stores, located at 2531 University Boulevard and at 4066 Westheimer Road, Houston, Texas, were owned and were operated by the said Ralph C. Wells, as a Sole Proprietorship. *316 Betty Wells did finally on or about October 15, 1955 abandon the marital domicile. On or about October 19, 1955, a written agreement was drawn by Charles Crady 111, attorney for Betty Wells, which did dissolve the marital community theretofore existing between Ralph C. Wells and Betty Wells, also known as Betty Powers, also known as Elizabeth Blanch Powers, also known as Betty Kjellberg, also known as Mrs. Henry Joseph Kjellberg. This agreement, it is contended by Ralph C. Wells was in accordance with the provisions of Article 4624a, Vernon's Texas Civil Statutes, effective December 31, 1955. Under this agreement, Ralph C. Wells was to devote one-half of his time to the Partnership to be formed effective January 1, 1956, and in return was to be entitled to 40% of the earned profits. Betty Wells was to devote full time to the proposed partnership, and was to receive 60% of the earned profits. Betty Wells did fail and refuse to devote her time to the business, and Ralph C. Wells was forced to spend more than the agreed 50% of his time handling such matters as personnel, credit investigations and credit granting, receiving and marking of merchandise, moving goods from store to store, *317 etc., all of which was to be done by the said Betty Wells. With the aforementioned additional duties, it was physically imposible for Ralph C. Wells to keep as thorough, detailed and current records as he desired. Taxpayer was also doing some accounting and tax work for others, which had previously been agreed in writing was the sole business of Ralph C. Wells, with Betty Wells not to share in any profits or losses, and to make no claim against said accounting work. Ralph C. Wells did work seven days per week and from 10 to 14 or more hours per day. Betty considered herself as petitioner's partner in operating the business known as "Betty Wells" during 1956. During 1956, in the operation of the business known as "Betty Wells," petitioner spent some time on personnel matters, credit investigations, granting credit, receiving and marking merchandise, moving goods from store to store, keeping the books of account of the business, purchasing supplies to be used around the office and stores, attending to all financial matters, running the office when Betty was out and paying the bills of the business. When the store located at 4066 Westheimer Street was opened, petitioner, in consultation *318 with Betty, did much of the necessary carpentry work, including building partitions, shelving and decorating necessary to remodel the store for use as a retail ladies' ready-to-wear shop. Issue 6 On December 9, 1960, respondent mailed petitioner a Form 17-A, Statement of Tax Due. The balance shown to be owed by petitioner was $31.37. The tax due was for the taxable year 1956. The parties have conceded certain issues which will be taken into consideration in a Rule 50 computation. Opinion Issue 1 The issue is whether petitioner is liable for the addition to tax provided in section 6651(a), [3] 1954 Code, for failure to file a return. *319 Petitioner contends that he prepared his original Federal income tax return, placed it in an envelope together with a check for $1,060.60. Petitioner states that he sealed the envelope, and affixed an unused three cent stamp thereto. Then, petitioner states, the envelope together with its contents was addressed to the district director of internal revenue, Austin, Texas, and bore the return address of the petitioner. Petitioner states that the envelope and contents were then placed in a United States mail box at approximately 6:30 or 7:00 P.M. on August 11, 1957, which was within the extended time allowed petitioner to file his return. Respondent contends that petitioner's return was never received. Respondent contends that it maintains a careful indexing system of all returns and remittances made. Respondent maintains that a careful search was made for petitioner's return and check but nothing was found. Respondent states that although petitioner testified to making out the return and check and mailing it that petitioner did not produce any corroborating evidence. Respondent states that "Certainly the cancelled check, the check stub, and the books of account would have buttressed *320 Mr. Wells' maked testimony." Respondent admits that if the testimony of petitioner is credible, the failure to file a return until March 25, 1958, was due to reasonable cause and not due to willful neglect. We agree with petitioner. We believe petitioner was a credible witness. In addition to the documentary evidence and petitioner's testimony as to mailing his return, there was also testimony that efforts were made to obtain information about the check sent to the district director. Petitioner contacted the bank about the check. It refused to give him any information without the acquiescence of Betty, which she refused to give. After the check had been outstanding one month, all cancelled checks were delivered to Betty. There was also the fact that a "copy" of petitioner's original return was presented to the district director. The instant case is indistinguishable from Walter M. Ferguson, Jr., 14 T.C. 846 (1950). In that case, one of the petitioners signed her 1945 return prepared for her by the bookkeeper and made out a check to the collector for the tax shown thereon, on or before March 15, 1946. The bookkeeper then placed the return and the check in an envelope *321 with other returns prepared by him. The envelope bore his return address, was addressed to the collector of internal revenue, Lynchburg, Virginia, and had stamps attached. The bookkeeper placed the envelope in the post office at Lynchburg on March 15, 1945. The office of the collector at Lynchburg had no record of the receipt of the return and the check had not been cashed. In holding for the petitioner, we stated at page 850: The final issue has to do with the penalty determined for the alleged failure of Anne to file a return for 1945. The Commissioner makes and could make no sound argument in light of the evidence. It is unnecessary to decide whether there was a "filing." This would not be the first time that a collector had lost a return. Even if no return was filed, the failure was due to reasonable cause (failure of the mails) and not to willful neglect upon Anne's part, so in no event would the penalty be proper. See also Jones v. United States, 226 F. 2d 24 (C.A. 9, 1955). We hold that respondent's determination was erroneous. Issue 2 In its original partnership return for 1956, the unincorporated business known as "Betty Wells" indicated that it had *322 a profit of $20,106.12. On November 30, 1959, an amended return was filed which indicated that the partnership had a profit of only $10,747.38. The issue is whether the income shown on the original partnership return for 1956 was correct. [4]
The difference in net profit of $9,358.74 was due to changes in the amounts of three items, [5] purchases discount, ad valorem taxes, and inventory. We shall consider each of these items separately. As to the purchases discount, we find that there is no evidence to support a figure other than the $6,132.37 shown on the original return. The mere introduction of the amended return will not sustain petitioner's burden of proving error in the original return. Similarly, we do not think petitioner has *323 shown that the ad valorem taxes should be other than the $42.58 shown on the original return. The evidence shows that Betty Wells, Inc., by check, paid $160.65 to the Harris County Ad Valorem Tax Collector and $195.38 to the City of Houston Ad Valorem Tax Collector. The checks were delivered during January 1957 and were charged against the corporation's bank account in February 1957. There is no evidence that this was an accrued liability of the partnership. In fact, there is no evidence as to just who owed the debt. Since the partnership and the corporation were both in existence in 1956, there is no way to ascertain who owed the taxes. With regard to the ending inventory of the partnership, petitioner contends that it should be $14,206.08 rather than the $22,706.95. It is petitioner's position that the physical inventory was $10,848.45. He states that the sum of $7,606.99 was erroneously included in inventory on the original Form 1065. Petitioner alleges that such inclusion consisted of invoices and packing lists which petitioner posted to the books on the advice and information given him by Betty as being properly includible in inventory when in fact only the sum of $3,357.63 *324 was so properly includible. The balance of said sum of $7,606.99 in the amount of $4,249.36, petitioner maintains, had already been posted and book entries pertaining thereto previously made so that a duplication occurred which constituted an erroneous over-statement of the inventory. Petitioner alleges that the balance of the difference in the inventory of $4,251.51 consists of an estimated cost of receiving, handling and marking of merchandise which should not have been included in inventory. Respondent contends that inventory of $22,706.95 shown on the original partnership return is correct. Respondent contends that inventory of $18,457.59 [6] was transferred to the corporation. Respondent points out that this value was arrived at after a physical count of merchandise on hand in each store as of October 17, 1956. Respondent also points out that petitioner testified that he added $4,251.51 to the physical count as costs incidental to handling and marking the inventory. Respondent concludes that there were no "duplications" of entries as contended by petitioner and the ending inventory is $22,706.95 as shown on the original partnership return and reflected in the partnership's books. *325 Respondent contends in the alternative that if the inventory is overvalued, then the same amount of taxable income will have been received by petitioner. Respondent's theory is based on the assets transferred to the corporation and the consideration received by petitioner. We cannot agree with either party. Although at one point petitioner testified that the physical inventory as of October 16, 1957, was $10,848.45, the evidence does not support this. Nor do we think there is any support for petitioner's contention that there were duplications of certain purchases entries. Although petitioner introduced an exhibit, which he himself drew up, purporting to show certain duplications, we fail to find a single one. Respondent's contention that inventory should be $22,706.95 is negated by the exhibit that he himself introduced. The physical inventory was clearly shown to be $18,457.59. It is true that when we add $4,251.51 (estimated marking and handling expense) to the foregoing figure we get $22,709.10 *326 which is close to the figure contended for by respondent. However, we think that the inclusion of these purported costs is erroneous for a number of reasons. First, the evidence clearly indicates that the ending inventory was $18,457.59. Secondly, the cost of marking and handling is not a cost of the inventory, but a cost of goods sold. Respondent's alternative contention is based on the following theory as set forth in his brief: Pursuant to sections 732(b) and (c), Internal Revenue Code of 1954, Ralph's basis in his undivided interest in each and every asset received upon liquidation of the partnership was $20,014.84/$37,017.99 times the adjusted basis of the assets in the hands of the partnership. Thus, Ralph's basis in the ending inventory of $22,706.95 was $12,277.16. The corporation Betty Wells, Inc. had a basis of $22,706.95 in the inventory it purchased from Ralph and Betty Wells. This was claimed on the corporation's first income tax return. * * * The corporation thus must have given Ralph and Betty Wells consideration worth $22,706.95 for the inventory. Ralph and Betty undoubtedly received consideration from the corporation for the inventory in the same ratio as their *327 respective bases in the inventory. Thus Ralph received $12,277.16 as consideration for the conveyance of his share of the inventory. If in this case Ralph is able to establish as a fact that the basis that he and Betty had in the ending inventory was, for example, $10,000.00 then the sale of this inventory to the corporation for $22,706.95 consideration was a taxable transaction to Ralph and Betty to the extent of the difference. Section 735(a)(2). There is no merit in respondent's contention. Aside from other erroneous assumptions, the evidence is clear that the consideration petitioner received for his interest in the corporation was $5,000 cash and not $12,277.16 as contended by respondent. See also sections 351 and 357, 1954 Code. We hold that the ending inventory of the partnership was $18,457.59. This will be taken into account in the Rule 50 computation. Issue 3 In his original tax return for 1956, Ralph claimed that $200 paid to the Club and $620 paid to Flato were deductible as nonbusiness bad debts under section 166, 1954 Code. Respondent has not challenged this. Petitioner now takes the position that the $820 is deductible as a loss on transactions entered into *328 for profit. Under Section 165, 1954 Code. [7] We do not agree. Sections 165 and 166 are mutually exclusive. The fact that the $820 might be deductible under section 166 does not make it deductible under section 165. Spring City Foundry Co. v. Commissioner, 292 U.S. 182 (1934). The evidence only indicates that petitioner made loans to the Club and to Flato. The record is barren of any evidence that these transactions were entered into with a profit motive. Just what petitioner expected to get from his brother-in-law's proposed acquisition is unknown. It is even more difficult to see how petitioner could have had a profit motive with the Club; especially when he testified it was to be a nonprofit organization. Issue 4
*329 The issue is whether $800 paid with the joint declaration of estimated tax should be allocated equally between petitioner and Betty. Section 6015(b), 1954 Code, provides that a husband and wife may make a joint declaration of estimated tax return. The section provides further that should the husband and wife file separate returns for the taxable year, the estimated tax paid with the declaration may be treated as the estimated tax of either the husband or wife, or it may be divided between them. Section 1.6015(b)-1(b), Income Tax Regs., [8] provides that in the event separate returns are filed after a joint declaration of estimated tax is filed the payment may be divided between the husband and wife as they may agree. *330 In the instant case, a joint declaration of estimated tax was filed for 1956 by petitioner and Betty. Eight hundred dollars was paid. On line 17(b) of petitioner's individual return, under the caption "Payments and credits of Estimated 1956 Tax," he shows $400. Likewise, Betty's separate return is the same. Apparently, the petitioner's argument is that the entire $800 was charged against his drawing account in Betty Wells, Inc., and thereby this entitles him to have the entire amount credited against his tax liability for 1956. Even if we were to accept petitioner's basic premise, he would not prevail. There is no evidence to indicate that the petitioner and Betty did not agree to divide the $800 equally. We hold that the $800 paid with the declaration of estimated tax return should be allocated equally between petitioner and Betty. Issue 5 The issue is whether petitioner is liable for the self-employment tax as provided in section 1401, [9] 1954 Code. Section 1402(a), 1954 Code, provides in part that "net earnings from self-employment" includes a partner's distributive share * * * of income or loss * * * from any trade or business carried on by a partnership of which he *331 is a member; * * *." See also sections 1.1402(a)-1(b)(7) and (c)(5)(ii), Income Tax Regs.
Apparently, petitioner's contention is that he is not liable for the self-employment tax because he was not a partner in the unincorporated business known as "Betty Wells." Petitioner contends that the business was a proprietorship. Petitioner argues that on or about May 8, 1953, a certificate of assumed name was filed with the County Clerk, Harris County, Texas, stating that Betty was the owner of the business known as "Betty Wells" which has not been cancelled, revoked, withdrawn or amended. Petitioner also contends that no partnership agreement was ever drawn up. We do not agree with petitioner. There seems to be little doubt that in the business known as "Betty Wells", Betty regarded herself as petitioner's partner. Petitioner kept the books of the concern in the form usually used by a partnership. There were two net worth accounts and two drawing accounts. In applying for an extension of time in which to *332 file the Form 1065, United States partnership return for 1956, petitioner signed as "partner." Ralph prepared both the original and the amended partnership returns and he signed the amended return as "partner." On both petitioner's original and his amended individual income tax returns he reported his distributive share of "partnership income" from the business known as "Betty Wells." Even the day-to-day operations of the business appeared to be run as a partnership. It seems clear that even petitioner considered the business to be a partnership. In his protest to the district director petitioner stated that "Ralph C. Wells was to devote one-half of his time to the Partnership to be formed effective January 1, 1956." Furthermore, it was even stipulated that "Petitioner expended $119.75 during the year 1956 to pay certain expenses of the partnership Ralph Wells and Betty Wells dba Betty Wells." We hold that petitioner was a partner in the business known as "Betty Wells" and is liable for the self-employment tax under section 1401. Issue 6 On December 9, 1960, respondent mailed petitioner a Form 17-A, Statement of Tax Due, indicating that petitioner owed $31.37. We see little *333 merit in petitioner's contention that the assessment was made under section 6213(B), 1954 Code, a nonexistent section of the Code. The only apparent evidence is a notation typed on the form received by petitioner. The notation is "IRC Sec. 6213 ("with only a half designated letter after the foregoing parenthesis, which might have been a capital "B". To uphold such a contention would certainly be to exalt form over substance. It seems quite clear that the section was intended to be "Sec. 6213(b)". [10]
*334 In a rather inarticulate manner, petitioner, on brief, has apparently tried to raise an issue as to the statute of limitations. Without discussing the matter, petitioner states: On or about December 10, 1960, Taxpayer did receive a Form L 21-A (1-60) via Certified Mail No. 367048, more commonly known as a "90 Day Letter." The question for decision is: Did Respondent make timely assessment of any additional amounts allegedly due the United States from the Taxpayer? This Court has held repeatedly that it will not consider issues raised for the first time on brief. Irving Segall, 30 T.C. 734 (1958); Sicanoff Vegetable Oil Corporation, 27 T.C. 1056, 1066 (1957); F. H. Philbrick, 27 T.C. 346, 353 (1956); see also Rule 7(c)(4)(B)4, Tax Court Rules of Practice. In the light of these authorities, it would be inappropriate to consider this belatedly raised issue. We accordingly make no decision on this issue. Decision will be entered under Rule 50. Footnotes
1. $11,474.08 X 65 percent.↩
2. $16,922.23 X 65 percent.↩
3. SEC. 6651. FAILURE TO FILE TAX RETURN. (a) Addition to the Tax. - In case of failure to file any return required under authority of subchapter A of chapter 61 (other than part III thereof), of subchapter A of chapter 51 (relating to distilled spirits, wines, and beer), or of subchapter A of chapter 52 (relating to tobacco, cigars, cigarettes, and cigarette papers and tubes), or of subchapter A of chapter 53 (relating to machine guns and certain other firearms), on the date prescribed therefore (determined with regard to any extension of time for filling), unless it is shown that such failure is due to reasonable cause and not due to willful neglect, there shall be added to the Amount required to be shown as tax on such return 5 percent of the amount of such tax if the failure is for not more than 1 month, with an additional 5 percent for each additional month or fraction thereof during which such failure continues, not exceeding 25 percent in the aggregate.↩
4. The issue is relevant to petitioner's tax liability since he must report his allquot share of the partnership income on his individual return for 1956.↩
5. ↩
Amount
Amount
shown on
shown on
Original
Amended
Differ-
Return
Return
ence
Purchases Dis-
count
$ 6,132.37
$ 5,630.53
$ 501.84
Ad Valorem
Taxes
42.58
398.61
356.03
Ending Inven-
tory
22,706.95
14,206.08
8,500.87
$9,358.74
6. ↩
Value of Inven-
tories at Esti-
Store in Which Located
mated Cost
2531 University Boulevard
$ 7,458.15
4066 Westheimer Street
10,999.44
$18,457.59
7. SEC. 165. LOSSES. (a) General Rule. - There shall be allowed as a deduction any loss sustained during the taxable year and not compensated for by insurance or otherwise. * * *
(c) Limitation on Losses of Individuals. - In the case of an individual, the deduction under retraction (a) shall be limited to - * * *
(2) losses incurred in any transaction entered late for profit, though not connected with a trade or business; * * *↩
8. § 1.6015(b)-1 Joint declaration by husband and wife. * * *
(b) Application to separate returns. The fact that a joint declaration of estimated tax is made by them will not preclude a husband and his wife from filling separate returns. In case a joint declaration is made but a joint return is not made for the same taxable year, the payments made on account of the estimated tax for such year may be treated as payments on account of the tax liability of either the husband or wife for the taxable year or may be divided between them in such manner as they may agree. In the event the husband and wife fail to agree to a division, such payments shall be allocated between them in accordance with the following rule. The portion of such payments to be allocated to a spouse shall be that portion of the aggregate of all such payments as the amount of tax shown on the separate return of the taxpayer bears to the sum of the taxes shown on the separate returns of the taxpayer and his spouse.↩
9. SEC. 1401. RATE OF TAX. In addition to other taxes, there shall be imposed for each taxable year, on the self-employment income of every individual, a tax as follows: * * *↩
10. SEC. 6213. RESTRICTIONS APPLICABLE TO DEFICIENCIES: PETITION TO TAX COURT. * * *
(b) Exceptions to Restrictions on Assessment. - (1) Mathematical errors. - If the taxpayer is notified that, on account of a mathematical error appearing upon the return, an amount of tax in excess of that shown upon the return is due, and that an assessment of the tax has been or will be made on the basis of what would have been the correct amount of tax but for the mathematical error, such notice shall not be considered as a notice of deficiency for the purposes of subsection (a) (prohibiting assessment and collection until notice of the deficiency has been mailed), or of section 6212(c)(1) (restricting further deficiency letters), or section 6512(a) (prohibiting credits or refunds after petition to the Tax Court), and the taxpayer shall have no right to file a petition with the Tax Court based on such notice, nor shall such assessment or collection be prohibited by the provisions of subsection (a) of this section. (2) Assessments arising out of tentative carryback adjustments. - If the Secretary or his delegate determines that the amount applied, credited, or refunded under section 6411 is in excess of the overassessment attributable to the carryback with respect to which such amount was applied, credited, or refunded, he may assess the amount of the excess as a deficiency as if it were due to a mathematical error appearing on the return. (3) Assessment of amount paid. - Any amount paid as a tax or in respect of a tax may be assessed upon the receipt of such payment notwithstanding the provisions of subsection (a). In any case where such amount is paid after the mailing of a notice of deficiency under section 6212, such payment shall not deprive the Tax Court of jurisdiction over such deficiency determined under section 6211 without regard to such assessment.↩