INES SIEGERT, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 2390–66.    Filed January 15, 1969.

*Arthur J. England, Jr.*, for the petitioner.
*W. Reeder Glass*, for the respondent.

HOYT, *Judge:* Respondent determined the following income tax deficiencies against petitioner:

| Taxable year | Deficiency |
|---|---|
| 1962 | $216 |
| 1963 | 214 |
| 1964 | 195 |

The sole issue for decision is whether amounts paid to the petitioner by her former husband under a court decree pursuant to the Uniform Reciprocal Enforcement of Support Laws of Florida and Virginia were alimony payments under section 71(a).[1]

All of the facts have been stipulated and are found accordingly. The stipulation of facts, together with the related exhibits, are incorporated herein by this reference. Ines Siegert, the petitioner, was a resident of Coral Gables, Fla., at the time she filed her petition in this case. Her tax returns for 1962, 1963, and 1964, were filed with the district director of internal revenue, Jacksonville, Fla.

Petitioner and Sheldon Ray Siegert, hereinafter referred to as Sheldon, were married on February 2, 1946. One child, Steven Victor Siegert, was born of this marriage on November 10, 1947.

Subsequently, petitioner and Sheldon experienced marital difficulties, and on or about November 19, 1956, they entered into a "Property Agreement" which provided, in pertinent part, as follows:

The Undersigned, SHELDON RAY SIEGERT, and INES SIEGERT, being married each to the other on the 2nd day of February, 1946, at Siana, Italy, and being of sound mind and body, do hereby mutually agree and exchange mutual promises to abide by this, a property and custody agreement, in any action for divorce which either party might cause to be filed in the future:

I

That SHELDON RAY SIEGERT, hereinafter referred to as the party of the first part, hereby promises and agrees that permanent custody and control of the minor child, STEVEN VICTOR SIEGERT, eight years of age, shall be vested in INES SIEGERT with rights of reasonable visitations reserved for the party of the first part.

II

That the party of the first part agrees to give, and the party of the second part agrees to accept the amount of $225.00 a month, through the month of May, 1957, as support and alimony for the party of the second part, and the minor child, STEVEN VICTOR SIEGERT; and further, the party of the first part agrees to pay, and the party of the second part agrees to accept $200.00 a month for support and alimony, from the first of June, 1957, thereafter until such time as the party of the second part, INES SIEGERT, should remarry, or until the minor child shall become legally of age.

---

[1] All statutory references are to the Internal Revenue Code of 1954.

## III

That in the event of remarriage of the party of the second part, [sic] is mutually agreed between the party of the first part and the party of the second part, that all alimony payments shall cease, but that the party of the first part shall pay over unto the party of the second part, the amount of $100.00 per month support of the minor child, STEVEN VICTOR SIEGERT, until such time as he shall reach his legal majority.

On January 18, 1957, petitioner was granted a divorce by the Circuit Court of the Eleventh Judicial Circuit in and for Dade County, Fla. The property settlement was incorporated into and made a part of the final decree by reference.

Petitioner has never remarried.

On October 12, 1960, petitioner filed a petition in the Circuit Court of the 11th Judicial Circuit in and for Dade County, Fla., seeking an order for support of her son from her former husband, Sheldon, under the provisions of the Uniform Reciprocal Enforcement of Support Act (Fla. Stat. Ann. ch. 88), hereinafter called the Uniform Support Act. This petition was not acted upon by the courts of Virginia when forwarded to Virginia because Sheldon could not be located at the address shown in the petition.

Thereafter, on or about June 15, 1961, in another and different action, petitioner secured a judgment in the Circuit Court of Hanover County, Va., against Sheldon for $5,800, representing delinquent payments under the property agreement. Petitioner has never collected any part of this judgment.

On August 7, 1961, petitioner again sought to compel her former husband to support his minor child; she filed another petition under the Uniform Support Act identical to the one referred to above, except that a new address was given for her former husband. This petition was forwarded by the Dade County, Fla., court to the Juvenile and Domestic Relations Court of Hanover County, Va., under procedures provided by the Uniform Support Act. Petitioner was required to complete an information sheet for filing in Florida in connection with her efforts to obtain support for her son from his father. This sheet was also forwarded to the Virginia court.

In response to the question, "Is there a complaint or order for support in any court?" contained in the information form, the petitioner replied, "Yes Divorce Decree (1/8/57) Miami, Fla., ordered $100/alimony/mo. and $100/mo. child support, which he paid fairly regularly until June, 1959; alimony 'til 1957." The more pertinent questions related to the petitioner's employment and salary, the ex-husband's employment and salary, and the last date of contribution for support. In answering the question, "What amount do you require for yourself and your child per week?" petitioner replied "$40.00." The words "yourself and" were deleted from the form. Both the in-

formation sheet and the petition itself indicate clearly that petitioner sought no support whatever for herself in this proceeding but only support for her minor child, Steven, and that she was relying upon the child's current needs and her former husband's ability to provide child support, not the prior agreement of the parties or the earlier Florida divorce decree.

The petition, which the Florida court forwarded to the Juvenile and Domestic Relations Court of Hanover County, Va., contained the following pertinent information:

1. THAT she [the petitioner] is the ex wife of Sheldon R. Siegert * * *

2. THAT Petitioner is the mother and said Respondent is the father of the following-named dependent (s) :

Steven b, 11/10/47

3. THAT said child is entitled to support from the Respondent under the provisions of the Uniform Reciprocal-Enforcement-of Support Act of this State (Chapter 29901, Laws of 1955), a copy of which is attached and made a part hereof.

4. THAT Respondent, on or about June, 1959 and subsequent thereto, refused and neglected to provide fair and reasonable support for the ~~petitioner and the other~~ dependent according to his means and earning capacity.

5. THAT, upon information and belief, Respondent now is residing or domiciled at Hylas, Virginia [,] [r]eceives $350 [per] mo. from U.S. Gov't, and is within the jurisdiction of the Court of Va. which State has enacted a law substantially similar to the Uniform Reciprocal Enforcement of Support Act of this State.

Again all references to petitioner as a dependent were stricken from the form petition as indicated above, and only support for the minor child, Steven, was sought.

The "Clerk's Certificate," which is attached to the petition, certifies that the following papers were mailed to the Virginia court:

Certificate and Order of Judge;
Certified copy of Petition and Summons, with Sheriff's Affidavit attached;
Information Sheet and copy of Chapter 27996, Laws of 1953
Insolvency Affidavit

On January 5, 1962, the Juvenile and Domestic Relations Court of Hanover County, Va., entered an order directing Sheldon to pay $100 monthly, commencing on January 15, 1962, for the support of petitioner and her son. The Virginia court's findings, included in a printed form for an order for support, in pertinent part, were as follows:

Petitioner and the dependent/s named in the Petition is/are in need and entitled to support from the Respondent and that the Respondent is chargeable with support as alleged in the aforementioned Petition.

*       *       *       *       *       *       *

THE COURT FURTHER FINDS as a matter of fact that Respondent receives $350.00 per month.

In a letter dated January 8, 1962, the lawyer representing petitioner in Virginia, Ernest W. Williams, informed her of the outcome of the proceedings in the following words:

Mr. Siegert discharged his lawyer and obtained the services of another, consequently we tried the case on Friday.

Judge Landram, using the contract as the basis for what was a proper amount of support money awarded your boy $100.00 per month, payments to begin this month, on or before the 15th.

Payments will be made to the court here, and this court will mail it to the court there. * * *

In each of the calendar years 1962, 1963, and 1964, petitioner received 12 $100 payments from the clerk of the Circuit Court of Dade County, Fla., which payments were transmitted from the Juvenile and Domestic Relations Court of Hanover County, Va., and which had been received from Sheldon Siegert.

On June 29, 1965, petitioner, in response to a notice of determination of deficiency in income tax for the calendar year 1962, filed a formal protest with the district director of internal revenue, Jacksonville, Fla. The petitioner submitted certain facts to demonstrate that she was not liable for the asserted income tax deficiency. Among others, the petitioner made the following allegations:

3. Upon taxpayer's ex-husband's failure to make payments under the above Property Agreement, taxpayer instituted a suit in the Juvenile and Domestic Relations Court of Hanover County, Virginia, in order to collect amounts due her under that Agreement. * * *

This was neither correct nor accurate and the protest also contained other obvious inaccuracies.

On October 1, 1965, the Juvenile and Domestic Relations Court of Hanover County, Va., entered a "Reformation of Decree, *nunc pro tunc*," revising the order of January 5, 1962, to clarify that all amounts paid by Sheldon were for the support of petitioner's son, Steven. The reformation of said order was done at petitioner's request. In the reformation of decree it was recited that the petition disclosed that petitioner was entitled to support for her minor child, Steven, and that it was never contemplated by any of the parties or by the court that any part of the $100 monthly support ordered by the Virginia court on January 5, 1962, "should be for the support of the Petitioner, but that on the contrary the entire sum should be for the support of the child." It was then ordered *nunc pro tunc*, that the original support decree be amended to delete all references to support for petitioner therefrom and to provide that monthly support of $100 be solely for Steven, beginning with the first payment due on January 15, 1962.

Respondent does not contest the effectiveness of the reformation of decree and the parties have stipulated that for all purposes of this case the support order of January 5, 1962, shall be deemed to have been originally entered in the manner reformed by the Virginia court on October 1, 1965. See *Margaret Rice Sklar*, 21 T.C. 349 (1953), acq. 1968-2 C.B. 3. Petitioner does not contest the fact that the property agreement of November 19, 1956, does not fix in terms of "an amount

of money or a part of the payment provided therein as a sum which is payable for the support of petitioner's son, Steven."

In his statutory notice of deficiency for 1962, respondent determined that petitioner had additional income of $1,200 received by her from Sheldon, includable under section 71(a) of the 1954 Code and in the alternative that petitioner was not entitled to the deduction of $600 claimed in her 1962 return as an exemption for Steven. Respondent concedes by stipulation, however, that petitioner is entitled to a $600 dependency exemption for Steven for 1962. For 1963 and 1964 respondent's determinations merely increased petitioner's income by $1,200 for each year, which amount "represents taxable alimony."

The determination of whether the payments received by petitioner pursuant to the Virginia order are within the provisions of section 71[2] turns upon a critical examination of this decree itself and its relationship, if any, with the prior property agreement and the Florida divorce decree of January 18, 1957.

Petitioner concedes that the property agreement, which was incorporated in the Florida divorce decree, does not fix in terms of an amount of money or a part of the payment provided therein as a sum which is payable for the support of petitioner's son, Steven Siegert. It is therefore established that the Florida divorce decree, standing alone, did not meet the specificity requirements laid down in *Commissioner* v. *Lester*, 366 U.S. 299 (1961), and if payments were received pursuant to this decree or an enforcement thereof they would be taxable income within section 71(a)(1).

However, the record before us demonstrates that all of petitioner's efforts to enforce the property agreement or the Florida decree and to enforce payments thereunder or to collect the arrears were futile and to no avail. Sheldon had left the jurisdiction and even after petitioner reduced her claims to alimony and child support to judgment in Virginia, she never collected any part of that judgment. It was

---

[2] SEC. 71. ALIMONY AND SEPARATE MAINTENANCE PAYMENTS.

(a) GENERAL RULE.—

(1) DECREE OF DIVORCE OR SEPARATE MAINTENANCE.—If a wife is divorced or legally separated from her husband, under a decree of divorce or of separate maintenance, the wife's gross income includes periodic payments (whether or not made at regular intervals) received after such decree in discharge of (or attributable to property transferred, in trust or otherwise, in discharge of) a legal obligation which, because of the marital or family relationship, is imposed on or incurred by the husband under the decree or under a written instrument incident to such divorce or separation.

\*   \*   \*   \*   \*   \*   \*

(b) PAYMENTS TO SUPPORT MINOR CHILDREN.—Subsection (a) shall not apply to that part of any payment which the terms of the decree, instrument, or agreement fix, in terms of an amount of money or a part of the payment, as a sum which is payable for the support of minor children of the husband. For purposes of the preceding sentence, if any payment is less than the amount specified in the decree, instrument, or agreement, then so much of such payment as does not exceed the sum payable for support shall be considered a payment for such support.

not until after she instituted the Uniform Reciprocal Enforcement of Support Act petition in the fall of 1961 and obtained the Virginia order directing Sheldon to pay $100 monthly to support his son that petitioner obtained any payments from her former husband; all of the payments in question were made to the Virginia court pursuant to that order and then forwarded through the initiating Florida court to her.

Respondent and petitioner have stipulated that for all purposes of this case the support order entered in the Virginia court on January 5, 1962, shall be deemed to have been originally entered in the manner reformed by the Virginia court on October 1, 1965. It is clear that the Virginia support order as reformed, if considered alone, fixes or designates the $100 monthly payments as support for the minor child, Steven, and payments made thereunder would not be alimony under section 71(a), taxable to petitioner; even if they were regarded as alimony, which they cannot be in light of the language of section 71(a), we would conclude that they would fall within the exclusionary provisions of section 71(b).

Petitioner contends that 71(a) has no applicability to the payments in questions because the Virginia decree imposes a duty of support under the laws of Virginia which is separate and distinct from the obligation imposed under the property agreement and the Florida decree of divorce. Because of its alleged separateness or independence from the Florida decree, and in light of the fixing of child support by the Virginia order itself, the petitioner concludes that the payments pursuant to this decree are in no sense within section 71(a). Petitioner, citing *Arthur D. Thomson*, 42 T.C. 825 (1964), affirmed sub nom. *Metcalf* v. *Commissioner*, 343 F. 2d 66 (C.A. 1, 1965), alternatively contends that to characterize the $100 payments as a discharge of Sheldon's legal obligations under the Florida decree is also to characterize the Virginia order for support as an extension of the Florida decree, thereby bringing the payments within section 71(b).

Respondent's position is that the Virginia decree did not modify or clarify the earlier decree herein referred to as the Florida decree but was merely an enforcement thereof, and the payments received by petitioner as a result of this enforcement are still tainted with the original lack of specificity and thus are taxable alimony to her. Respondent, citing *Chester L. Tinsman*, 47 T.C. 560 (1967), alternatively contends that even if the Virginia decree resulted from an original though related action, the fact that the payments satisfy obligations under both decrees and no action was taken to reconcile the two decrees, requires the finding that there is lacking the clarity of rights and obligations required by section 71(b) and the *Lester* decision. We cannot agree.

The Uniform Reciprocal Enforcement of Support Law, as its title so aptly suggests, was enacted by the Florida Legislature for the primary purpose of improving and extending by reciprocal legislation the enforcement of duties of support. Fla. Stat. Ann., sec. 88.021. Similar laws have been enacted in a number of other States, including Virginia, for the same purposes. The Uniform Law offers a person having custody of a minor an expedient and inexpensive way of enforcing a duty, imposed on a person resident in a foreign State, to support the minor. *Clark* v. *Clark*, 139 So. 2d 195 (Fla. App. 1962).

In general, a proceeding under the Uniform Law is commenced by filing a petition in the appropriate court of any State which has adopted a version of the Uniform Law. The State in which the proceeding is commenced, in this instance Florida, is called the "initiating state." The designated court of the initiating State is required to make a preliminary determination as to whether the petition "sets forth facts from which it may be determined that the defendant owes a duty of support and that a court of the responding state may obtain jurisdiction of the defendant or his property" and if the court so finds, it then certifies its finding and forwards same with the initiating petition to the appropriate court of the "responding state." Fla. Stat. Ann., sec. 88.141. The court of the responding State, in this instance Virginia, then makes an independent determination as to whether a duty of support is owing, and if such a duty is found to exist the court may order the defendant to furnish such support, and, if necessary, subject the defendant's property to its order. Va. Code Ann. ch. 5.2, sec. 20-88.24. The Virginia court also has the power when acting as the responding State to assure compliance with its order by *in personam* contempt or other proceedings. Va. Code ch. 5.2, sec. 20-88.26. The duty of support under the Uniform Law includes any duty of support "imposed or imposable by law or by any court, order, decree or judgment," Va. Code Ann. ch. 5.2, sec. 20-88.13 (6).

In the instant case the petition filed in Dade County, Fla., met all the statutory requirements of the Uniform Law and, accordingly, it was forwarded by the Florida Circuit Court to the Juvenile and Domestic Relations Court in Hanover County, Va., the place in which Sheldon Siegert resided.

Upon receipt of the instruments forwarded by the Florida court, the Virginia court conducted a hearing, at which Sheldon Siegert was represented by counsel, on the question of his duty to support his and petitioner's minor child. As a result of that hearing, the Virginia court entered an order of support which, as later reformed, directed Sheldon to pay $100 per month into the Virginia court *for the support of his minor child, Steven.* The findings of the Virginia Court make no reference to the Florida decree but instead point out facts which

serve as an independent basis for the resulting order. If the Virginia court were merely enforcing a divorce decree of a foreign State it would be unnecessary to find that the petitioner and her son were in need of support and that the father, Sheldon, received $350 per month. These findings were made and, in the context of the relatively sparse wording of the form order, they appear to be of at least some relevance to the $100 support order. The variance between the awards of the two decrees, $200 as opposed to $100, is another factor which negates the contention that the Virginia decree was merely enforcing the Florida divorce decree. The "Clerk's Certificate" attached to the petition, which the Florida court forwarded to the Virginia court, made no suggestion as to the inclusion of the divorce decree among the papers that were mailed along with the petition to the Virginia court. Thus again, we encounter another cloud on the enforcement of divorce decree argument.

Respondent contends that the facts establish that petitioner was seeking a way to require her former husband to comply with his obligations under the Florida decree. The evidence before us does not support this view. Her efforts to follow that route had availed her nothing and she was obviously seeking an alternate.

The petition which was forwarded to the Virginia court did not contain the slightest reference to the Florida decree but instead referred to the ex-husband's failure to provide reasonable support for his son, Steven, and that said child was entitled to support under the provisions of the Uniform Act. This petition certainly could not give rise to the enforcement of the Florida decree. The petitioner's statement on the information sheet as to the divorce decree was in response to the question of whether any complaint or order for support existed in any court. It was not a plea for the enforcement of the divorce decree but only a statement of its existence.

Respondent calls attention to a letter from the lawyer representing the petitioner in the Virginia proceeding which informed her of the outcome of the action. The letter, in pertinent part, read as follows:

> Judge Landram, using the contract as the basis for what was a proper amount of support money awarded your boy $100.00 per month, payments to begin this month, on or before the 15th.

This letter does establish that the Virginia court did have before it the November 1956 property agreement and that there is a substantial likelihood that this agreement served as a guide in the court's determination of a proper amount of child support. It does not establish that the divorce decree, which incorporated the property agreement, was being enforced by the Virginia court. On the contrary the evidence of record convinces us that the Virginia court decree was nothing more or less than an order that a father in the jurisdiction of the court

meet his duty of support toward a minor child living in another jurisdiction. We conclude that the Virginia decree was not merely an enforcement of the Florida decree or a portion thereof but, as it appears on its face, the result of a hearing to determine independently whether the petitioner's son was entitled to support and what amount would be a proper award in light of the ex-husband's income.

The Virginia order does not present the ambiguity of whether or not it was intended to supplant or modify the earlier decree as in *Chester L. Tinsman, supra,* relied on by respondent, and it is not a decree of divorce or a decree of separate maintenance. Periodic payments made under it were not imposed on Sheldon by such a decree but by the simple support order because he owed a duty of support to his minor son which he was not fulfilling in spite of his prior agreement to do so and a Florida divorce decree which he chose to ignore.

Besides the already mentioned dissimilarity between the scope of the decrees and in the amount of awards, a section under both versions of the Uniform Act provides that "The remedies herein provided are in addition to and not in substitution for any other remedies." Fla. Stat. Ann. sec. 88.041; Va. Code Ann. ch. 5.2, sec. 20–88.14. The following provision is found under the Florida Uniform Act:

> Any order of support issued by a court of this state when acting as a responding state shall not supersede any previous order of support issued in a divorce or separate maintenance action, but the amounts for a particular period paid pursuant to either order shall be credited against amounts accruing or accrued for the same period under both. Fla. Stat. Ann. sec. 88.281.

The State of Virginia did not adopt the above provision of the Uniform Law, indicating that it was the intent of the Virginia Legislature that a Virginia court's support order under the Uniform Act, when acting as the responding State, might well supersede any previous order of support issued in a divorce or separate maintenance action.

The petitioner has urged that the holding in *Arthur D. Thomson, supra,* should be controlling in the present case. While there is some similarity here to *Thomson* in relation to the existence of two effective and enforceable documents, there are distinguishing factors which make it inapposite. *Thomson* involved a separation agreement which did not specifically designate any portion of a $125 per week payment as child support, and a later amended divorce decree which did specifically designate $125 as child support. Under applicable local law, both the agreement and decree continued in effect, and both were enforceable during the years at issue. Each instrument imposed an obligation, but the same payment discharged both obligations. We held that since one instrument fixed the payments as child support, the language of section 71(b), written in the disjunctive, was satisfied.

While it was clear in *Thomson* that the same payment discharged both obligations, it is not so in the case at hand. The Virginia decree is independent in its enforceability and does not serve as a modification or enforcement of the earlier Florida decree. The payments made pursuant to the Virginia support order served only as a discharge of the obligation that arose by virtue of that order.

The subsequent Virginia support order, standing by itself, in light of the language of sections 71(a) and (b), is clearly not a decree of divorce or of separate maintenance nor were the payments in issue made to the Virginia court payments imposed on or incurred by the husband under such a decree or under a written instrument incident to such divorce or separation. We have already determined that the Virginia decree fixed in terms of an amount of money a sum which is payable for the support of the minor child, Steven. We, therefore, hold that the $1,200 payments received in 1962, 1963, and 1964, by petitioner were not includable in petitioner's gross income and respondent's determination to that effect cannot be sustained.

*Decision will be entered for the petitioner.*